20-CV-1770 (AMD)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VANESSA FEELEY, on behalf of herself and a class
of similarly situated individuals,

Plaintiff,

- against -

THE CITY OF NEW YORK, et al.

Defendants.

**CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23**

## HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for City Defendants
100 Church Street, Room 2-149
New York, NY 10007-2601

*Of Counsel:  Kami Z. Barker*
*Tel: (212) 356-2440*
*Matter No. 2020-023477*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................III

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT ..........................................................................................................2

POINT I

THE COURT MUST DECLINE TO CERTIFY
PLAINTIFF'S CLASS DEFINITION BECAUSE IT
IS OVERBROAD ..............................................................................2

POINT II

PLAINTIFF FAILS TO SATISFY RULE 23(A). ....................................3

A. Plaintiff Is Unable to Establish Numerosity
Under Rule 23(a) ................................................................4

B. Plaintiff Is Unable to Establish Commonality
Under Rule 23(a)(2) ...........................................................7

1. Plaintiff Fails to State a Claim Under the
ACA's Amendment of the FLSA ..................................9

2. Plaintiff Fails to State a Claim Under Section
206-c of the NYLL .......................................................11

3. Plaintiff Fails to State a Claim Under the
CHRL or the PWFA ......................................................12

4. Plaintiff Fails to Establish a Title VII, SHRL,
or Section 1983 Claim of Discrimination......................13

(a) Plaintiff Failed to Exhaust
Administrative Remedies ......................................13

(b) Plaintiff Fails to Establish a *Prima Facie*
Case of Disparate Treatment ................................14

5. Plaintiff Fails to Prove the Presence of Other
Aggrieved Parties ........................................................14

**Page**

6.  Plaintiff's Purported Class Members are Distinctly Dissimilar .......................................... 15

7.  The Scope of Plaintiff's Purported Class Disputes Commonality ................................. 16

8.  Plaintiff Fails to Prove that FDNY Had a Discriminatory Lactation Policy ............................. 18

C.  Plaintiff Fails to Establish Typicality Under Rule 23(a)(3) .............................................. 18

D.  Plaintiff Fails to Establish Adequacy Under Rule 23(a)(4) ............................................. 20

1.  Plaintiff is Unfit to Represent the Class ....................... 21

2.  Representation of Counsel Is Also Inadequate ................................................... 21

POINT III

PLAINTIFF FAILS TO SATISFY RULE 23(B) ..................... 25

A.  Plaintiff Fails to Satisfy the Requirements of Rule 23(b)(3) .............................................. 25

B.  Plaintiff Fails to Satisfy the Requirements for a Rule 23(b)(2) Class ......................................... 27

CONCLUSION ................................................................. 28

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Adkins v. Morgan Stanley*,
   307 F.R.D. 119 (S.D.N.Y. 2015) .................................................................................19, 26

*Ahmed v. T.J. Maxx Corp.*,
   10-CV-3609 ADS ETB, 2013 U.S. Dist. LEXIS 81942
   (E.D.N.Y. June 8, 2013) (Spatt, J.).................................................................................10

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................................25, 26

*Ansari v. New York Univ.*,
   179 F.R.D. 112 (S.D.N.Y. 1998).........................................................................................27

*Ball v. Ohio Ambulance Sols., LLC*,
   No. 14 CV 355, 2015 U.S. Dist. LEXIS 114664
   (N.D. Ohio Aug. 28, 2015)...................................................................................................9

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................................................23

*C.M. v. Syosset Cent. Sch. Dist.*,
   No. 11- CV-1402 (MKB) (GRB), 2013 U.S. Dist. LEXIS
   114302 (E.D.N.Y. Aug. 9, 2013) ...................................................................................23, 24

*Cole v. Mandell Food Stores*,
   93 N.Y.2d 34 (1999)............................................................................................................13

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..............................................................................................................26

*Consolidated Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ...................................................................................................4

*Cooper v. Southern Co.*,
   390 F.3d 695 (11th Cir. 2004) ............................................................................................18

*Cordes & Co, Fin. Servs. Inc., v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .................................................................................................20

*Daniels v. City of N.Y.*,
   198 F.R.D. 409 (S.D.N.Y. 2001).........................................................................................2

*Demarco v. Edens*,
   390 F.2d 836 (2d Cir. 1968) .................................................................................................4

**Cases**                                                                                      **Pages**

*Dimitracopoulos v. City of New York*,
    26 F. Supp. 3d 200 (E.D.N.Y. June 2, 2014)............................................................5

*EEOC v. Vamco Sheet Metals, Inc.*,
    2014 U.S. Dist. LEXIS 77436 (S.D.N.Y. 2014) ............................................11, 14

*Eisen v. Carlisle & Jacquelin*,
    391 F.2d 555 (2d Cir. 1968) ........................................................................21-22

*Forman v. Data Transfer*,
    164 F.R.D. 400 (E.D. Pa. 1995) ........................................................................3

*Francis v. City of New York*,
    235 F.3d 763 (2d Cir. 2000) ............................................................................13

*General Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ....................................................................15, 17, 20

*German v. Federal Home Loan Mortgage Corp.*,
    885 F. Supp. 537 (S.D.N.Y. 1995) ....................................................................4

*Grant v. Morgan Guar. Trust Co. of N.Y.*,
    548 F. Supp. 1189 (S.D.N.Y. 1982) ..................................................................15

*Grewcock v. Yale New Haven Health Servs. Corp.*,
    293 F. Supp. 3d 272 (D. Conn. 2017) ..............................................................14

*Haitian Cts. Council v. McNary*,
    969 F.2d 1326 (2d Cir. 1992),
    *vacated as moot sub nom., Sale v. Haitian Ctrs. Counsel*,
    509 U.S. 918 (1993) ........................................................................................2

*Harris v. Initial Sec., Inc.*,
    No. 05-3873 (GBD), 2007 U.S. Dist. LEXIS 18397
    (S.D.N.Y. Mar. 7, 2007) ..................................................................................21

*Helwing v. City of New York*,
    2021 U.S. Dist. LEXIS 38243 (E.D.N.Y. Mar. 1, 2021)........................................5

*Jianmin Jin v. Shanghai Original, Inc.*,
    990 F.3d 251 (2d Cir. 2021) ......................................................................21, 23

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ..............................................................................7

**Cases**                                                                                                            **Pages**

*Kassman v. KPMG LLP*,
　　416 F. Supp. 3d 252 (S.D.N.Y. 2018) ............................................................. 8, 17

*Kratzert v. White Lodging Services, Inc.*,
　　2010 U.S. Dist. LEXIS 20820 (N.D.N.Y. 2010) ............................................. 11, 12

*Lampkins v. Mitra QSR KNE, LLC*,
　　383 F. Supp.3d 315 (D. Del. 2019) ..................................................................... 9

*Landor-St. Gelais v. Albany Int'l Corp.*,
　　763 N.Y.S.2d 369 (N.Y. App. Div. 2003) ............................................................ 13

*LeGrand v. New York City Transit Auth.*,
　　1999 U.S. Dist. LEXIS 8020 (E.D.N.Y. May 26, 1999) ................................... 16, 27

*Lico v. TD Bank*,
　　No. 14-CV-4729, 2015 U.S. Dist. LEXIS 70978
　　(E.D.N.Y. 2015) ............................................................................................... 9, 10

*In re Literary Works in Elec. Databases Copyright Litig.*,
　　654 F.3d 242 (2d Cir. 2011) ............................................................................. 20

*Lo Re v. Chase Manhattan Corp.*,
　　431 F. Supp. 189 (S.D.N.Y. 1977) .................................................................... 19

*McGill v. City of Ottawa*,
　　773 F. Supp. 1473 (D. Kan. 1991) .................................................................... 24

*Moore v. Publicis Grp. SA*,
　　No. 11-cv-1279 (ALC) (AJP), 2014 U.S. Dist. LEXIS 185384
　　(S.D.N.Y. May 15, 2014) .................................................................................. 26

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
　　723 F.3d 192 (2d Cir. 2013) ............................................................................. 10

*Oakley v. Verizon Communs., Inc.*,
　　No. 09-9175 (CM), 2012 U.S. Dist. LEXIS 12975
　　(S.D.N.Y. Feb. 1, 2012) ................................................................................ 20, 26

*Paulson v. Tidal*,
　　2018 U.S. Dist. LEXIS 118238 (S.D.N.Y. 2018) ........................................... 11, 13

*Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*,
　　172 F. Supp. 3d 568 (D. Conn. 2016) ............................................................... 14

**Cases**                                                                                                 **Pages**

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05-MD-1720 (MKB) (JO), 2020 U.S. Dist. LEXIS 847
    (E.D.N.Y. Jan. 2, 2020) ...............................................................................................24-25

*Pikulin v. City Univ. of N.Y.*,
    176 F.3d 598 (2d Cir. 1999) ................................................................................................5

*Primavera Familienstiftung v. Askin*,
    178 F.R.D. 405 (S.D.N.Y. 1998) .........................................................................................4

*Pucino v. Verizon Wireless Commc'ns, Inc.*,
    618 F.3d 112 (2d Cir. 2010) ..............................................................................................14

*Puglisi v. TD Bank, N.A.*,
    CV 13-00637 LDW GRB, 998 F. Supp. 2d 95
    (E.D.N.Y. Feb. 25, 2014) ..................................................................................................10

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
    No. 11-6546 (JPO), 2013 U.S. Dist. LEXIS 5635
    (S.D.N.Y. Jan. 9, 2013) ....................................................................................................20

*Reese v. Arrow Financial Servcs. LLC*,
    202 F.R.D. 83 (D.Conn. 2001) ............................................................................................4

*Richardson v. Restaurant Mktg. Assocs., Inc.*,
    83 F.R.D. 268 (N.D. Cal. 1978) ...................................................................................15, 16

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ................................................................................................4

*Rocco v. Goldberg (In re Goldberg)*,
    No. 811-78915-reg, Chapter 11, Adv. Proc. No. 812-08099-reg,
    487 B.R. 112 (Bankr. E.D.N.Y. Jan. 29, 2013) ................................................................24

*Romero v. H.B. Auto. Group, Inc.*,
    No. 11-386 (CM), 2012 U.S. Dist. LEXIS 61151
    (S.D.N.Y. May 1, 2012) ....................................................................................................17

*Rosquist v. Soo Line R.R.*,
    692 F.2d 1107 (7th Cir. 1982) ...........................................................................................24

*Ross v. Nikko Sec. Co. Int'l, Inc.*,
    133 F.R.D. 96 (S.D.N.Y. 1990) .........................................................................................15

**Cases**                                                                                           **Pages**

*Salz v. Casey's Mktg.*,
    No. 11-CV-3055-DEO, 2012 U.S. Dist. LEXIS 100399
    (D. Iowa July 19, 2012) ................................................................................... 9

*Sampson v. Medisys Health Network*,
    No. 10-CV-1342 (SJF)(ARL), 2011 U.S. Dist. LEXIS
    12697 (E.D.N.Y. Feb. 8, 2011) ..................................................................... 10

*Sheehan v. Purolator, Inc.*,
    103 F.R.D. 641 (E.D.N.Y. 1984),
    *aff'd*, 839 F.2d 99 (2d Cir.),
    *cert. denied*, 488 U.S. 891 (1988) ......................................................... 15, 19

*Slader v. Pearle Vision, Inc.*,
    No. 00-2797 (JSR), 2000 U.S. Dist. LEXIS 16453
    (S.D.N.Y. Nov. 14, 2000) ............................................................................. 21

*Steffin v. First Charter Fin. Corp.*,
    77 F.R.D. 498 (C.D. Cal. 1978) .................................................................... 15

*Stoudt v. E.F. Hutton & Co., Inc.*,
    121 F.R.D. 36 (S.D.N.Y. 1988) .................................................................... 27

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ........................................................................... 25

*Taylor v. Zucker*,
    No. 14-5317 (CM), 2015 U.S. Dist. LEXIS 98877
    (S.D.N.Y. July 27, 2015) ............................................................................. 19

*Torres v. Pisano*,
    116 F.3d 625 (2d Cir. 1997) ........................................................................ 14

*Ugactz v. United Parcel Serv., Inc.*,
    No. 10-CV-1247, 2013 U.S. Dist. LEXIS 43481
    (E.D.N.Y. Mar. 26, 2013) ............................................................................. 5

*Walker v. Columbia Univ.*,
    62 F.R.D. 63 (S.D.N.Y. 1973) ..................................................................... 22

*Weinberg v. Lear Fan Corp.*,
    102 F.R.D. 269 (1984) .................................................................................. 22

*Weissman v. ABC Fin. Servs.*,
    203 F.R.D. 81 (E.D.N.Y. 2001) .................................................................... 4

**Cases**                                                                                                **Pages**

*Wright v. Stone Container Corp.*,
   524 F.2d 1058 (8th Cir. 1975) ............................................................ 15

*Young v. UPS*,
   135 S. ct. 1338 (2015) ...................................................................... 14

**Statutes**

29 C.F.R. § 1601.28(e)(1) ....................................................................... 13

29 U.S.C. § 216(b) ................................................................................ 9, 10

42 U.S.C. § 1983 .................................................................... 1, 5, 6, 8, 13

42 U.S.C. § 2000e-5(f)(3) ....................................................................... 13

Fed. R. Civ. P. § 23 ............................................................... 2, 3, 10, 18

Fed. R. Civ. P. § 23(a) .......................................................... 1, 2, 3, 4

Fed. R. Civ. P. § 23(a)(1) ................................................................... 4

Fed. R. Civ. P. § 23(a)(2) ................................................................... 7

Fed. R. Civ. P. § 23(a)(3) ................................................................. 18

Fed. R. Civ. P. § 23(a)(4) ................................................................. 20

Fed. R. Civ. P. § 23(b) .................................................................. 2, 25

Fed. R. Civ. P. § 23(b)(1) .................................................................. 1

Fed. R. Civ. P. § 23(b)(2) ........................................................... 1, 2, 27

Fed. R. Civ. P. § 23(b)(3) ......................................................... 1, 25, 26

Fed. R. Civ. P. § 23(g) ..................................................................... 21

Fed. R. Civ. P. § 23(g)(1)(A) .............................................................. 21

Fed. R. Civ. P. § 36(b) ...................................................................... 2

FLSA § 6 ........................................................................................... 9

FLSA § 7 ........................................................................................... 9

**Statutes**                                                                                      **Pages**

FLSA § 207(r) .........................................................................................................9

N.Y.C. Admin. Code § 8-107 ...............................................................................13

N.Y.C. Admin. Code § 8-502(d) ............................................................................5

N.Y. Civ. Rights Law § 79-e ...............................................................................13

N.Y.L.L. § 21 .......................................................................................................12

N.Y.L.L. § 206-c .....................................................................................5, 8, 11, 12

**Other Authorities**

7A Charles Alan Wright et al., Federal Practice and Procedure § 1762
    (2d ed. 1997).....................................................................................................4

Department of Labor, "Reasonable Break Time for Nursing Mothers,"
    75 Fed. Reg. 80078 (Dec. 21, 2010).................................................................10

## PRELIMINARY STATEMENT

Defendants, the City of New York ("City"), Michael Rubens Bloomberg ("Mayor Bloomberg"), Bill de Blasio ("Mayor de Blasio"), Martha H. Hirst ("Hirst"), Edna Wells Handy ("Handy"), Stacey Cumberbath ("Cumberbath"), Lisette Camilo ("Camilo"), Salvatore Cassano ("Cassano"), Daniel A. Nigro ("Nigro"), Mark Aronberg ("Aronberg"), Andy Diamond ("Diamond"), and Patrick Murphy ("Murphy") (collectively "City Defendants"), respectfully submit this memorandum of law in opposition to Vanessa Feeley's ("plaintiff") motion for class certification, dated August 21, 2022.

Plaintiff seeks certification of a class under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(1), 23(b)(2), or 23(b)(3), for declaratory and injunctive relief with respect to the defendants' violation of her rights under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL"). Specifically, plaintiff claims, without any evidence, that defendants failed and refused to adequately accommodate her request to express milk in the workplace, created a hostile work environment, and retaliated against her for requesting an accommodation. Plaintiff also claims, without any proof, that New York City Fire Department ("FDNY") and New York City Department of Citywide Administrative Service ("DCAS") had a pattern and practice of similarly failing to accommodate and mistreating other nursing mothers in FDNY.

Plaintiff now seeks to represent a class of all nursing mothers who ever worked or will work for FDNY. However, plaintiff's purported class is overbroad, overinclusive, and, therefore, unascertainable. Certification of the class as proposed by plaintiff should also be denied because plaintiff is not an adequate class representative with respect to each of the claims plead. Moreover, plaintiff cannot satisfy the numerosity, commonality, and typicality requirements of

Fed. R. Civ. P. 23(a) and/or she will not adequately represent the putative class. Plaintiff has also failed to meet the criterion set forth in Fed. R. Civ. P. 23(b) for maintaining a class action. Therefore, as set forth more fully below, the Court should decline to certify the proposed class.

## STATEMENT OF FACTS

For a complete statement of facts, City Defendants respectfully refer the Court to the Declaration of Kami Z. Barker, dated November 3, 2022, ("Barker Decl.") and the annexed exhibits, including but not limited to the Declarations of ……………………FDNY's 30(b)(6) witness, Assistant Commissioner of FDNY's Equal Employment Opportunity ("OEE") Office, Donald Nguyen ("Nguyen"), dated November 2, 2022 ("Nguyen Decl."), Defendant Diamond, dated November 1, 2022, ("Diamond Decl."), and Defendant Murphy, dated October 29, 2022 ("Murphy Decl.").

## ARGUMENT

### POINT I

### THE COURT MUST DECLINE TO CERTIFY PLAINTIFF'S CLASS DEFINITION BECAUSE IT IS OVERBROAD

"In addition to the requirements of Rule 23(a) and (b)(2), the proposed class must also meet a requirement not contained within the express provisions of Rule 23 – the class must be sufficiently definite." *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001). Therefore, a court should not certify an overbroad class. *See Haitian Cts. Council v. McNary*, 969 F.2d 1326, 1337038 (2d Cir. 1992), *vacated as moot sub nom., Sale v. Haitian Ctrs. Counsel*, 509 U.S. 918 (1993). Because plaintiff's proposed class is overbroad, the Court should deny class certification.

Plaintiff's proposed class definition is: "All female employees that have or will be employed with [the City] and assigned to the [FDNY] from August 15, 2007, to the date of judgment that have the need or chooses to express milk during work hours" (hereinafter "Proposed

2

Class Definition"). *See* Comp., Dkt. No. 1, p.3, at ¶ 7. The Proposed Class Definition is so overbroad that it includes not only current and future FDNY employees, but also former employees who may not have been employed by the City for 15 years. Additionally, simply "needing" or "choosing" to express milk during work hours does not automatically mean that an employee's right to do so was somehow impaired or interfered with by defendants. Thus, "needing" or "choosing" to express breast milk during work hours would not confer standing on a putative class member because this alone does not create a "claim or controversary" necessary for redress.

Indeed, plaintiff's proposed class definition is indefinite and unascertainable and would welcome putative class members – such as plaintiff herself – who were not actually harmed by any of defendants' challenged policies and practices. Courts reject class definitions that "require addressing the central issue of liability in a case" to determine membership since the membership inquiry "essentially require[s] a mini hearing on the merits of each [plaintiff's] case. *See Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).

In addition, the Proposed Class must be rejected as overbroad because it seeks to certify a class of current, former, and future employees who worked in potentially 185 titles over the course of, at least, 15 years.  Plaintiff, however, failed to show why the statute of limitations should be extended to 12 years prior to the filing of this Complaint. Thus, any putative class should be limited to those who have *actual claims* that fall within the below-described statute of limitations. For these reasons and those set forth below, defendants respectfully request that the Court decline to certify plaintiff's proposed class definition.

## POINT II

## <u>PLAINTIFF FAILS TO SATISFY RULE 23(A).</u>

Class certification is governed by Rule 23, and Section (a) of the Rule requires plaintiff to establish four prerequisites: (1) *Numerosity*: the class is so numerous that joinder of all

3

members is impracticable; (2) *Commonality*: there are questions of law or fact common to the class; (3) *Typicality*: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) *Adequacy*: the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

## A.      Plaintiff Is Unable to Establish Numerosity Under Rule 23(a)

For class certification to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Impracticable does not mean impossible, but plaintiff must prove that joinder would be difficult or inconvenient. *See id.*; *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y.  1998); 7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (2d ed. 1997). The Second Circuit has held that "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). However, a motion for class certification cannot succeed where numerosity is based on pure speculation or bare allegations. *See Weissman v. ABC Fin. Servs.*, 203 F.R.D. 81, 84 (E.D.N.Y. 2001) (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)); *Reese v. Arrow Financial Servcs. LLC*, 202 F.R.D. 83, 90 (D.Conn. 2001). And that is the case here.

Plaintiff "must show some evidence of or reasonably estimate the number of class members." *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 551 (S.D.N.Y. 1995) (internal citations omitted). Here, plaintiff proves nothing of the sort. She only conclusively assumes that FDNY employees who took a childcare leave are similarly (and allegedly) aggrieved. *See* Pl. Memo. at p. 7. This is insufficient, and her motion for class certification must be denied.

Plaintiff argues that she meets the requirements of numerosity because FDNY employs 17,000 people. *See* Sanders Decl. at ¶ 76. She also claims to establish numerosity because "approximately four hundred seventy-six (476) female employees took child care leave" and

"approximately two hundred sixty-one (261) female employees *allegedly* filed express milk applications with the FDNY" between August 15, 2007 and May 17, 2021. *See* Pl. Memo. at p. 7. (emphasis her own). However, the date range is inapposite, the first two numbers are irrelevant,[1] and the last is simply false.

First, plaintiff's time frame is far beyond the statute of limitations for a discrimination complaint. At most, plaintiff's Title VII claims accrued on March 29, 2018, 300 days prior to filing her charge of discrimination on January 23, 2019, and her Section 1983, SHRL, and CHRL claims accrued on April 10, 2017, three years prior to filing her Complaint. *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999); *Helwing v. City of New York*, 2021 U.S. Dist. LEXIS 38243, *12 (E.D.N.Y. Mar. 1, 2021); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 211 (E.D.N.Y. June 2, 2014); N.Y.C. Admin. Code § 8-502(d).[2] The fact that Section 206-c was passed on August 15, 2007 is irrelevant to when plaintiff's or the class's claims accrued, and plaintiff's reliance on this date should be disregarded. Thus, the Proposed Class should begin, at the earliest, in April 2017.

Second, plaintiff cites Exhibit "17" to support her assertion that 261 employees requested lactation accommodations between August 15, 2007 and May 17, 2021. However, even if the referenced period were correct (it is not), this statement would be false. Exhibit "17" is a list of female employees who returned to work after childbirth between August 15, 2007 and March of 2019 and were asked by the Leave Unit if they required an accommodation to express milk. *See*

---

[1] It should go without saying that every employee who took a childcare leave does not automatically mean the employee also expressed breast milk in the workplace. It certainly doesn't imply that they were denied an adequate accommodation, discriminated or retaliated against, or mistreated, and that is the relevant inquiry.

[2] Neither plaintiff's claims nor her purported class claims are entitled to use theories of a continuing violation to toll their statute of limitations either. *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 U.S. Dist. LEXIS 43481, at *19-20 (E.D.N.Y. Mar. 26, 2013).

Nguyen Tr., Ex. "C," at 105-11; Gabriel-Perez Tr., Ex. "L," at 29-35, 44-47. The rightmost column, entitled "comments," indicates whether the employee requested an accommodation or chose not to participate. *See* Nguyen Tr., Ex. "C," at 110-111; Gabriel-Perez Tr., Ex. "L," at 44; Pl. Ex. "17." Of the 261 employees who returned to work after childbirth between 2007 and 2019, only 72 of them requested some form of accommodation, only one of them was an Auto Mechanic (plaintiff), and each of them received the accommodation they requested. *See* Nguyen Decl., Ex. "A," at ¶ 38.

More importantly, plaintiff's Title VII claims began to accrue on March 29, 2018. From March 29, 2018 until April of 2019 when FDNY's EEO Office began overseeing the lactation accommodation process, only seventeen employees returned to work after childbirth, and only five requested a lactation accommodation, which they each received. *See* Ex. "17;" *see also* Nguyen Decl., Ex. "A," at ¶ 39. What's more, only one of them was an Auto Mechanic, and that was plaintiff. Critically, none of these employees, including plaintiff, complained of being inadequately accommodated, discriminated, retaliated, or mistreated. *See id.* at ¶ 43. The numbers going back to April 10, 2017 when her Section 1983, SHRL, and CHRL claims accrued are similarly minimal. Only 46 employees returned to work after childbirth during that time, and only 11 of them requested a lactation accommodation, which they each received. *See id.* at ¶ 40.

Further, from April 2019 until March of 2021, only nineteen FDNY employees requested an accommodation to express milk, and they were assigned to sixteen different locations. *See id.* at ¶ 41; *see also* Recent List of Accommodation Requests, Ex. "P." For each request, the EEO Office inspected the employee's work location prior to her returning to ensure compliance with all relevant laws, and BFM surveyed every FDNY facility in 2020 with the goal of placing a lactation room in every building. *See* Brooks Tr., Ex. "M," at 15:7-19, 35:18 – 36:8. Where needed,

EEO Office worked with FDNY BFM to have a refrigerator, electrical outlet, chair, and desk installed or added where needed. *See* Nguyen Decl., Ex. "A," at ¶ 35. Thus, plaintiff is unable to point to a single FDNY employee who was denied an accommodation to express milk in the workplace or discriminated against because of her choice to do so, and she fails to establish numerosity.

In any event, when utilizing the correct statute of limitations applicable to plaintiff's claims, the maximum amount of putative class members is 36 (i.e. this is the number of employees who returned from child care leave from April 2017 to the present and indicated to the FDNY their intention to express breast milk at work). This number does not satisfy numerosity, and plaintiff's motion for class certification must be denied.

**B.     Plaintiff Is Unable to Establish Commonality Under Rule 23(a)(2)**

Rule 23(a)(2) requires plaintiff to establish that "there are questions of law or fact common to the class." Here, plaintiff simply repeats her Complaint's conclusory allegations as proof of having common issues of facts and law with the purported class. *See* Sanders Decl. at ¶ 81; *see also* Compl. at ¶ 17. However, merely "[r]eciting these questions is not sufficient to obtain class certification." *Dukes*, 564 U.S. at 349.

Class certification requires more than a showing that the proposed class members "have all suffered a violation of the same provision of law." *Id*. at 350. Notably, here, the Proposed Class Definition does not require a putative class member to have an alleged violation of law. For this reason alone, class certification must be denied. Setting that fatal defect aside, any claimed violations of law "must depend on a common contention," the "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Where, for instance, "the same conduct or practice by the same defendant gives rise to the same kind of

claims from all class members, there is a common question" within the meaning of Rule 23(a)(2). *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citation omitted).

In an employment discrimination class action, commonality demands that there be "some glue holding the alleged reasons for all [the challenged employment] decisions together . . . [that] will produce a common answer to the crucial question why was I [treated this way]." *Dukes*, 564 U.S. at 352 (emphasis in original). That glue may be supplied by a "companywide evaluation method that can be charged with bias" or "significant proof that [the employer] operated under a general policy of discrimination." *Id*. at 353 (internal quotation marks omitted).

It follows that, in assessing plaintiff's disparate treatment pattern and practice claims, the Court must consider whether plaintiff has shown that nursing mothers are subjected to "a common mode" or "general policy" of discrimination at FDNY. *Dukes*, 564 U.S. at 355–56. Indeed, "[a]s is true in many [employment discrimination] class actions, the crux of this case is commonality." *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 274 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). And, here, plaintiff falls well short of providing the "glue" between her claims and those of her purported class. Therefore, plaintiff has not carried her burden of showing commonality, and class certification must be denied.

Plaintiff argues that her claims "raise[] questions regarding [the City's] fail[ure] to protect the legal rights of nursing mothers to express milk in the workplace in contravention of the FLAS [sic], [Section] 206-c [of the New York Labor Law ("NYLL")] and the PWFA." *See* Pl. Memo. at p. 8. Plaintiff argues that her claims "arise from the same unlawful patterns, practices and/or policies within the FDNY, and are based on the legal theory that these patterns, practices and/or policies violate legal rights protected under FLSA, [Section] 206-c [of the NYLL] and the PWFA." *See* Sanders Decl. at ¶ 84. However, plaintiff critically fails to allege any causes of action

under these three statutes. She only brings claims pursuant to Title VII, Section 1983, the SHRL, and the CHRL. *See* Compl. at pp. 39-57. Therefore, plaintiff cannot establish that her claims share common questions of law with the class, and her motion for class certification must be dismissed.

### 1. Plaintiff Fails to State a Claim Under the ACA's Amendment of the FLSA

Plaintiff argues that DCAS and FDNY violated her and other FDNY nursing mothers' rights to express milk in the workplace in violation of, *inter alia,* the Affordable Care Act's ("ACA") Amendment of the FLSA. *See* Pl. Memo. at p. 8; *see also* Sanders Decl. at ¶¶ 11-19. However, plaintiff does not allege any causes of action pursuant to FLSA.[3] *See* Compl., *generally.* Nevertheless, even if she had plead an FLSA cause of action, plaintiff still fails to state a claim under the statute. Moreover, even if she stated an FLSA claim, she fails to properly move for certification of an FLSA opt-in collective. Therefore, certification must be denied.

FLSA's lactation break provision in § 207(r) does not provide an explicit cause of action to remedy alleged violations thereof.[4] *See Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp.3d 315 (D. Del. 2019). Rather, it must be read in conjunction with the penalty provision of FLSA which states, "[a]n employer who violates the provisions of section 6 or section 7 of this act shall be liable … in the amount of [the employee's] unpaid minimum wages, or their unpaid overtime compensation … and … liquidated damages." 29 U.S.C. § 216(b). Thus, FLSA only provides a cause of action for wage violations, not for failure to give break time or provide adequate facilities, and plaintiff's claims fail to state a FLSA claim.[5]

---

[3] Plaintiff only alleges that City Defendants were required to follow the ACA's Amendments of the FLSA as they pertain to lactation in the workplace. *See* Compl. at ¶¶ 62-64.

[4] Some courts find that there is no private right of action under § 207(r) of the FLSA at all. *See e.g. Salz v. Casey's Mktg.*, No. 11-CV-3055-DEO, 2012 U.S. Dist. LEXIS 100399 (D. Iowa July 19, 2012); *Ball v. Ohio Ambulance Sols., LLC*, No. 14 CV 355, 2015 U.S. Dist. LEXIS 114664 (N.D. Ohio Aug. 28, 2015))).

[5] Indeed, the statute does not provide a private remedy for other claims such as claims of discomfort or embarrassment like the ones plaintiff makes here. *See Lico v. TD Bank*, No. 14-CV-4729, 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y.

To plead an FLSA claim under the lactation break provision, plaintiff must allege a claim of lost wages and overtime or liquidated damages to fit under the remedy provision of 29 U.S.C. § 216(b).[6] Indeed, to survive dismissal, plaintiff "must provide sufficient detail about the length and frequency of [her] unpaid work to support a reasonable inference that she" was denied wages for work performed. *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Sampson v. Medisys Health Network*, No. 10-CV-1342 (SJF)(ARL), 2011 U.S. Dist. LEXIS 12697, at *4 (E.D.N.Y. Feb. 8, 2011). Here, plaintiff makes no such allegations, nor could she; plaintiff was paid her full salary during her FDNY employment and was offered overtime every day, which she declined. *See* Pl. Tr., Ex. "Q," at p. 56-57, 195-196, 239. Therefore, plaintiff fails to plead or establish an FLSA claim, and certification must be denied.

Moreover, even if plaintiff had alleged an FLSA violation, "[a] collective action under the FLSA is different from the typical class action under [Rule 23 of] the Federal Rules of Civil Procedure..." in that plaintiff is required to move for collective certification which, if granted, requires putative members to opt into the case rather than opt out. *Puglisi v. TD Bank, N.A.*, CV 13-00637 LDW GRB, 998 F. Supp. 2d 95 (E.D.N.Y. Feb. 25, 2014); *see also Ahmed v. T.J. Maxx Corp.*, 10-CV-3609 ADS ETB, 2013 U.S. Dist. LEXIS 81942, at *7 (E.D.N.Y. June 8, 2013) (Spatt, J.). Plaintiff does not move for conditional certification of a collective, nor does she intend to ask putative collective members to opt into her claim. Indeed, plaintiff has never requested a

---

2015). As follows, a plaintiff must state a claim for lost wages to have a private right of action under this FLSA provision, and plaintiff makes no such claims here.

[6] In any case, the Department of Labor does not require employers to compensate employees for lactation breaks. Thus, even where an employer denied a nursing mother's right to lactation breaks, there would be no penalties under the statute unless the employer failed to pay the employee's wages or overtime as a result of their need to lactate. *See Lico*, 2015 U.S. Dist. LEXIS 70978 at *8, (citing Department of Labor, "Reasonable Break Time for Nursing Mothers," 75 Fed. Reg. 80078 (Dec. 21, 2010).

stipulation to toll the collective members' statutory period to opt in. Therefore, plaintiff's claim cannot be certified as a collective under FLSA, and her motion must be denied.

**2. Plaintiff Fails to State a Claim Under Section 206-c of the NYLL**

Plaintiff argues that DCAS and FDNY violated her and other FDNY nursing mothers' rights to express milk in the workplace in violation of, *inter alia,* Section 206-c of the NYLL, also known as the New York Nursing Mother's Law ("NML"). *See* Pl. Memo. at p. 8; *see also* Sanders Decl. at ¶¶ 20-28. Indeed, plaintiff's individual and class claims allegedly accrued on August 15, 2007 when the NML was passed. *See* Compl. at ¶ 7; *see also* Sanders Decl. at ¶¶ 20-23. However, plaintiff's Complaint critically omits any causes of action under the NYLL.[7] In any case, there is no right to a private cause of action under Section 206-c,[8] and plaintiff fails to state a claim. Therefore, certification under the NYLL must be denied.

In *Paulson v. Tidal*, the plaintiff brought an action of discrimination based on her need to express breastmilk under, *inter alia,* NYLL § 206-c. 2018 U.S. Dist. LEXIS 118238 (S.D.N.Y. 2018). There, the Court noted that the statutory text of § 206-c of the NYLL is silent on whether it creates a private right of action and declined to exercise jurisdiction on the issue. *Id.*; *see also EEOC v. Vamco Sheet Metals, Inc.*, 2014 U.S. Dist. LEXIS 77436 (S.D.N.Y. 2014)).

However, the Court in *Kratzert v. White Lodging Services, Inc.* did assert jurisdiction over the issue and held that NYLL § 206-c does *not* create a private right of action. 2010 U.S. Dist. LEXIS 20820 (N.D.N.Y. 2010). According to the *Kratzert* Court, "it is clear from the statute and overall structure of the Labor Law that the legislative goal was to improve workplace conditions and not establish a vehicle for the compensation of particular individuals."

---

[7] Plaintiff only alleges that City Defendants were required to follow Section 206-c of the NYLL. *See* Compl. at ¶ 58.

[8] "The statutory text of the NYLL § 206-c is silent as to whether it creates a private right of action." *Vamco Sheet Metals, Inc.*, 2014 U.S. Dist. LEXIS 77436 at *7.

*Kratzert*, 2010 U.S. Dist. LEXIS 20820, at *2.[9] Thus, class certification must be denied as plaintiff fails to state a claim under Section 206-c.

Moreover, even if the NML came with a private right of action (it does not), plaintiff still fails to establish a violation under the NYLL. Section 206-c provides, in relevant part, that an "employer shall make reasonable efforts to provide a room or other location, in close proximity to the work area, where an employee can express milk in privacy," and that "[n]o employer shall discriminate in any way against an employee who chooses to express breast milk in the workplace." N.Y. Lab. Law § 206-c. Plaintiff admits that this is exactly what City Defendants did for her. *See* Pl. Tr., Ex. "Q," at 254-255. Indeed, it was FDNY's policy that all nursing mothers in FDNY were permitted to take lactation breaks in a room close to their workstation if they requested such an accommodation. *See* Barker Decl. at ¶¶ 12-14. Plaintiff has presented absolutely no evidence that this policy was somehow violated. Thus, her conclusory allegations otherwise are insufficient to grant class certification.

### 3.   Plaintiff Fails to State a Claim Under the CHRL or the PWFA

Plaintiff argues that DCAS and FDNY violated her and other nursing mothers' rights to express milk in the workplace in violation of, *inter alia,* the CHRL as it was amended by the PWFA in 2014. *See* Pl. Memo. at p. 8; *see also* Sanders Decl. at ¶¶ 29-41. However, plaintiff fails to state a claim here too, and her motion for class certification must, therefore, be denied.

First, plaintiff claims that the SHRL and CHRL was amended by the PWFA. However, the PWFA is only law in the District of Columbia, not New York. *See* 2013 D.C. ALS 458, 2013 D.C. Ch. 458, 2013 D.C. B 769. Nevertheless, plaintiff accurately alleges that the CHRL

---

[9] The Court also stated that an employee aggrieved by NYLL § 206-c may instead pursue administrative enforcement procedures under NYLL § 21. *Id.*

was amended by Local Law No.185 in 2018. *See* Compl. at ¶ 70. Effective March 18, 2019, Local Law No.185 amended the New York City Administrative Code § 8-107 to require employers to accommodate nursing mothers who request to express milk in the workplace with: (1) paid or unpaid lactation breaks; and (2) a clean and private lactation room, other than a bathroom, in reasonable proximity to the employee's workstation that has a chair, a flat surface, an electrical outlet, nearby running water, and a nearby refrigerator for breast milk storage.

However, prior to March 18, 2019, when all of plaintiff's claims arose, Section 79-e of the CHRL provided that "a mother may breast feed her baby in any location, public or private, where the mother is otherwise authorized to be . . ." N.Y. Civ. Rights Law § 79-e. "The language of the statute unambiguously refers only to breast-feeding, not to expressing milk." *Landor-St. Gelais v. Albany Int'l Corp.*, 763 N.Y.S.2d 369, 370 (N.Y. App. Div. 2003). Therefore, this Court is "obligated to construe the statute so as to give effect to the plain meaning of the words." *Id.* (quoting *Cole v. Mandell Food Stores*, 93 N.Y.2d 34, 39 (1999)). Nursing mothers who pumped – as opposed to breast fed their babies – were not protected by the CHRL prior to March 18, 2019. Accordingly, plaintiff's claims prior to that date – that is, the entirety of her claims – fail to state a claim under the CHRL. *Paulson*, 2018 U.S. Dist. LEXIS 118238. Accordingly, class certification must be denied as questions of law under the CHRL do not exist.

### 4. Plaintiff Fails to Establish a Title VII, SHRL, or Section 1983 Claim of Discrimination

#### (a) Plaintiff Failed to Exhaust Administrative Remedies

A right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") is a precondition to bringing a Title VII claim in federal court. *See* 42 U.S.C. § 2000e-5(f)(3); 29 C.F.R. 1601.28(e)(1); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). Plaintiff admits in her Complaint that she has not received a right-to-sue letter. *See* Compl.

at ¶ 5. Since defendants never waived plaintiff's precondition to suit, her Title VII claims should be dismissed for failure to exhaust administrative remedies, and certification must be denied.

(b) **Plaintiff Fails to Establish a *Prima Facie* Case of Disparate Treatment**

While plaintiff fatally fails to allege causes of action under the Pregnancy Discrimination Act ("PDA"), her Title VII and SHRL lactation discrimination claims[10] are evaluated under the PDA's standard. *EEOC v. Vamco Sheet Metals, Inc.*, No. 13-cv-6088 JPO, 2014 U.S. Dist. LEXIS 77436 at *14-15 (S.D.N.Y. June 5, 2014) ("Lactation is a related medical condition of pregnancy for purposes of the [PDA].") (internal citations and quotations omitted); *see also Grewcock v. Yale New Haven Health Servs. Corp.*, 293 F. Supp. 3d 272, 274 (D. Conn. 2017) (concluding that breast milk expression is subject to protection under Title VII); *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 574-75 (D. Conn. 2016) (same).

To establish a *prima facie* case of disparate treatment under the PDA, plaintiff must establish that (l) she belonged to a protected class; (2) she sought an accommodation; (3) FDNY did not accommodate her; and (4) FDNY did accommodate others "similar in their ability or inability to work," who did not express breastmilk. *Young v. UPS*, 135 S. ct. 1338, 1354 (2015). Here, plaintiff cannot establish the third or fourth prong as plaintiff admits that FDNY accommodated her. *See* Pl. Tr., Ex. "Q," at 169-170. Plaintiff has not otherwise shown that FDNY accommodated similarly situated employees who did not express breastmilk any differently or better than it accommodated her. Therefore, class certification must be denied.

5.  **Plaintiff Fails to Prove the Presence of Other Aggrieved Parties**

Regarding similar class actions, the Supreme Court has explained:

---

[10] Claims asserted under Title VII and the SHRL are reviewed according to the same standards and are analytically identical. *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010); *see also Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997).

> Conceptually, there is a wide gap between (a) an individual's [discrimination] claim … and [her] otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class of claims. For respondent to bridge that gap, [s]he must prove much more than the validity of [her] own claim.

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 (1982).

To do this, courts after *Falcon* have required individual plaintiffs to establish that there are aggrieved persons in the purported class, primarily through affidavits from employees alleging discriminatory treatment or other evidence confirming the existence of an aggrieved class. *See, e.g., Ross v. Nikko Sec. Co. Int'l, Inc.*, 133 F.R.D. 96, 97 (S.D.N.Y. 1990); *Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 649 (E.D.N.Y. 1984), *aff'd*, 839 F.2d 99 (2d Cir.), *cert. denied*, 488 U.S. 891 (1988); *Grant v. Morgan Guar. Trust Co. of N.Y.*, 548 F. Supp. 1189, 1193 (S.D.N.Y. 1982).[11] Here, plaintiff submitted no affidavits from, or evidence related to, other aggrieved persons. Indeed, plaintiff cannot name a single FDNY employee who claims that she was denied an accommodation to express milk in the workplace or was discriminated against because of her choice to do so. Therefore, plaintiff's motion for class certification should be denied.

### 6. Plaintiff's Purported Class Members are Distinctly Dissimilar

Even if plaintiff could establish a discrimination claim herself (she cannot) and had evidence of other aggrieved persons (she does not), the details underlying each nursing mother's circumstances are inherently varied. This, alone, makes it doubtful that the purported class

---

[11] Even prior to *Falcon*, some courts refused to certify Title VII class actions where the plaintiff failed to produce affidavits or other evidence establishing the existence of an aggrieved class. *See, e.g., Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir. 1975); *Richardson v. Restaurant Mktg. Assocs., Inc.*, 83 F.R.D. 268, 270 (N.D. Cal. 1978); *Steffin v. First Charter Fin. Corp.*, 77 F.R.D. 498, 500 (C.D. Cal. 1978).

members' claims would present common questions of fact or that they would represent allegations typical of other nursing mothers in FDNY. Indeed, this is precisely what the Court found in *LeGrand v. New York City Transit Auth.*, when it refused to certify plaintiffs' pregnancy discrimination claims for reasons of, *inter alia,* commonality. *LeGrand*, 1999 U.S. Dist. LEXIS 8020, *16-18 (E.D.N.Y. May 26, 1999) ("the details underlying each named plaintiff's circumstances are sufficiently varied that it appears doubtful their claims present common questions of fact or that they represent allegations typical of other pregnant employees.").

In any event, an employer's policy of "allowing discretion by local supervisors over employment matters" will not, typically, present questions and answers common to a large class. *Dukes*, 564 U.S. at 355 (emphasis omitted). Indeed, "too much discretion, as *Dukes* explains, is 'the opposite of a uniform employment practice that would provide the commonality needed for a class action.'" *Richardson*, 2021 U.S. Dist. 908222 at *29 (quoting *Dukes*, 564 U.S. at 355).

Here, plaintiff testified that her supervisors informally accommodated her for several months after returning from maternity leave before formally doing so. At first, they permitted her to take extended lactation breaks while on the clock from a private office or unused conference room without making a formal request. *See* Pl. Tr., Ex. "Q," at pp. 221-22; *see* Barker Decl. at ¶¶ 43-45. It was only when Williams discovered FDNY's new Lactation Policy that plaintiff was asked to submit a formal accommodation request and clock out when she took lactation breaks. *See id.* at ¶¶ 46-47. Such a neutral application of FDNY's Lactation Policy for plaintiff cannot rise to a class action on behalf of all nursing mothers in FDNY. Therefore, certification must be denied.

### 7. The Scope of Plaintiff's Purported Class Disputes Commonality

Plaintiff's proposed class spans fifteen years and covers every civilian and uniformed title in FDNY, including 170 civil service civilian titles and 16 civil service uniformed

titles, assigned to over 3,050 facilities owned and operated by FDNY. *See* Nguyen Decl., Ex. "A," at ¶ 4; *see also* Brooks Tr., Ex. "M," at 9-10. Indeed, even if the class were limited to the 72 nursing mothers who requested a lactation accommodation between 2007 and 2019, the scope of this narrowly defined class would still include employees from 20 different titles assigned to over 16 locations. *See* Nguyen Decl., Ex. "A," at ¶ 38; *see also* Pl. Ex. "17."

       Either way, plaintiff purports to represent a class that lumps together job titles such as Firefighter, Attorney, Clerical Associate, and Auto Mechanic. These titles are rife with glaring dissimilarities based upon professional and educational qualifications, job duties, civil service status, and union representation. Titles, such as Attorney and Electrician, require degrees and certificates, while other titles, such as Principal Administrative Associate, do not. Many titles are competitive titles hired off an eligible list while other titles, such as Attorney, are exempt from the civil service hiring process. Additionally, the putative class members belong to different unions, while other titles lack union representation. *See* Nguyen Decl., Ex. "A," at ¶¶ 5-6.

       This type of loosely related top-to-bottom 1970s-vintage class action was rarely filed, much less certified, even before *Dukes* and hearkens back to the freewheeling era before *Falcon*. 457 U.S. at 156-157. To be sure, the *Kassman* Court denied certification where the proposed class "covers a myriad of job descriptions, ranging from accountants to scientists, engineers, attorneys and Ph.D. economists, at levels of seniority ranging from Associate to Managing Director." 416 F.Supp.3d at 277; *see also Romero v. H.B. Auto. Group, Inc.,* No. 11-386 (CM), 2012 U.S. Dist. LEXIS 61151, at *53 (S.D.N.Y. May 1, 2012).

       *Kassman* pales in comparison to the sprawling class plaintiff proposes, and she faces a truly daunting task of identifying the "glue" needed to bind together as few as 20 and as many as 186 titles. *Dukes*, 564 U.S. at 352. It matters little that a vast array of dissimilar job titles

17

is housed under one roof. The dissimilarities amongst these titles render it difficult, if not impossible, to raise a common question "capable of class wide resolution" that can be resolved "in one stroke." *Id.* at 350. Therefore, plaintiff's motion for class certification must be denied.

### 8. Plaintiff Fails to Prove that FDNY Had a Discriminatory Lactation Policy

*Dukes* noted that "significant proof that an employer operated under a general policy of discrimination" could establish commonality. *Id*. at 339 (brackets and quotation marks omitted). However, such "proof" is wholly lacking here. Indeed, DCAS and FDNY's Lactation Policies complied with all relevant laws and regulations, and all evidence, including plaintiff's experience, confirms just that. Her conclusory allegations to the contrary are unconvincing, and plaintiff completely ignores FDNY's efforts to increase the gender diversity of its workforce and ensure that female employees succeed, including initiatives she was included in. *See* Pl. Tr., Ex. "Q," at pp. 24-26, 42-44, 78; *see also* Nguyen Decl, Ex. "A," at ¶¶ 45-49.[12]

In sum, plaintiff and the putative class members "have little in common but their [expression of breast milk] and this lawsuit." *Dukes*, 564 U.S. at 360. Rule 23 demands far more to certify a class. Therefore, the Court should deny plaintiff's motion.

### C.   Plaintiff Fails to Establish Typicality Under Rule 23(a)(3)

Plaintiff's most fundamental shortcoming is that she does "not have claims that would have been typical of the *entire class*." *Cooper v. Southern Co.*, 390 F.3d 695, 715 (11th Cir. 2004)(emphasis in original). The putative class is astonishing in its breadth, covering more than 186 uniformed and civilian titles, including Firefighters and EMS, as well as professional, clerical, administrative, and craft titles. *See* Nguyen Decl., Ex. "A," at ¶¶ 4-6. Plaintiff represents just one

---

[12] This is to say nothing of the accommodations FDNY provides to all nursing mothers, including numerous lactation rooms and pods throughout the City.

of these titles – Auto Mechanic. *See Taylor v. Zucker*, No. 14-5317 (CM), 2015 U.S. Dist. LEXIS 98877, at *24 (S.D.N.Y. July 27, 2015)(plaintiffs who "represent only three of 68" organizations in putative class are "not a representative sample"); *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 139 (S.D.N.Y. 2015)(plaintiffs "do not represent a broad enough swath" to be typical of entire class). Therefore, she cannot represent the putative class, and her motion should be denied.

The antiquated, top-to-bottom nature of the purported class further illustrates plaintiff's lack of typicality. Plaintiff held a civilian, unionized, permanent, civil service position, atypical of the professional titles that require specialized education or experience, let alone uniformed Firefighters, Fire Marshalls, and EMS who are assigned to over 3,050 FDNY facilities in all five boroughs and work throughout their precinct. *See* Brooks Tr., Ex. "M," at pp. 9-10; *see also* Nguyen Decl., Ex. "A," at ¶¶ 4-6. Even when such class actions were more common in the 1970s and 1980s, courts still expressed concern that plaintiffs' claims were atypical. *See Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 652 (E.D.N.Y. 1984), *aff'd*, 839 F.2d 99 (2d Cir. 1988); *Lo Re v. Chase Manhattan Corp.*, 431 F. Supp. 189, 197-98 (S.D.N.Y. 1977).

Plaintiff's testimony further illustrates her weakness as a class representative. Plaintiff held three civilian titles at FDNY – Auto Service Worker, Provision Mechanic, and Permanent Auto Mechanic. *See* Pl. Tr., Ex. "Q," at pp. 27, 30-34, 159-160, 213; *see also* Nguyen Decl., Ex. "A," at 51. These positions are far from typical of the array of positions included in the purported class. Plaintiff was assigned to always work at one location, the shop floor of Fleet Services, and that location is adjacent to and within 75 feet from Fleet Services' administrative offices. *See id.* at pp. 46-47; *see also* Nguyen Decl., Ex. "A," at 51; Diamond Decl., Ex. "S," at ¶ 16. As a result, she was able to express milk in nearby vacant private offices or conference rooms whenever she needed. Therefore, plaintiff lacks class standing to represent employees who travel

throughout their borough and do not have nearby administrative offices to privately express milk whenever they wish.[13] Plaintiff also lacks class standing to represent employees, like Attorneys, who have their own private offices and can privately express milk whenever they wish.

Nevertheless, even if plaintiff had standing, her claim is atypical of the class members who worked at various locations within their precinct, such as Firefighters, EMS, and Fire Marshals, or those who worked from their own private offices, such as executive staff. *Oakley v. Verizon Communs., Inc.*, No. 09-9175 (CM), 2012 U.S. Dist. LEXIS 12975, at *40 (S.D.N.Y. Feb. 1, 2012). It is black-letter law that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 155. Because plaintiff cannot satisfy this standard, approving her as a class representative "would do a disservice to the putative class[.]" *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11-6546 (JPO), 2013 U.S. Dist. LEXIS 5635, at *21 (S.D.N.Y. Jan. 9, 2013). Therefore, plaintiff's claims are atypical of those in her purported class, and class certification must be denied.

## D.     Plaintiff Fails to Establish Adequacy Under Rule 23(a)(4)

Rule 23(a)(4) requires that "the named plaintiffs must possess the same interests and suffer the same injuries as the class members" to ensure that "the representative parties will fairly and adequately protect the interests of the class." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). Adequacy under Rule 23(a)(4) also entails an inquiry as to whether plaintiff's attorney is qualified, experienced, and able to conduct the litigation. *Cordes & Co, Fin. Servs. Inc., v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Plaintiff fails to establish either, and her motion for certification must be denied.

---

[13] For these employees, FDNY either builds out lactation rooms or provides a lactation pod in their assigned firehouse and EMS stations. *See* Brooks Tr., Ex. "M," at pp. 19-20.

1.  **Plaintiff is Unfit to Represent the Class**

Plaintiff resigned from FDNY on October 26, 2019. *See* Pl. Tr., Ex. "Q," at p. 282. As a result, her claims for prospective relief are now moot. Irrespective of the mootness issue, however, plaintiff's interests are "quite likely in conflict with the interests of current employees, for a former employee's primary interest necessarily centers on recovering back pay, while a current employee may well be far more interested in obtaining injunctive relief." *Slader v. Pearle Vision, Inc.*, No. 00-2797 (JSR), 2000 U.S. Dist. LEXIS 16453, at *2 (S.D.N.Y. Nov. 14, 2000); *see also Harris v. Initial Sec., Inc.*, No. 05-3873 (GBD), 2007 U.S. Dist. LEXIS 18397, at *21 (S.D.N.Y. Mar. 7, 2007). More importantly, plaintiff testified that she had no plans of having more children again. *See* Pl. Tr., Ex. "Q," at p. 92. Thus, she cannot adequately represent a class of current and future FDNY employees who presently express milk in the workplace or might do so in the future, and her motion for class certification should be denied.

2.  **Representation of Counsel Is Also Inadequate**

When a district court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(g). Rule 23(g) requires courts to consider several criteria, including counsel's efforts investigating the claims, experience with class actions, knowledge of the area of law, and resources. *See* Fed. R. Civ. P. 23(g)(1)(A); *see also Jianmin Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 254-255 (2d Cir. 2021). Plaintiff argues that her attorney, Eric Sanders of the Sanders Firm, P.C., is an adequate counsel to represent the purported class because he has years of experience litigating employment discrimination cases, including those against the City of New York. *See* Sanders Decl. at ¶ 98; *see also* Pl. Memo. at pp. 11-12. However, this does not meet the standard of establishing adequate class counsel, and plaintiff's motion must be denied.

"An essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle &*

*Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). When the deadline to file class certification is missed, the adequacy of the counsel is then examined. *Weinberg v. Lear Fan Corp.*, 102 F.R.D. 269, 271 (1984). The late filing "may not, on its own, be an adequate ground to bar class certification, [but] it is certainly a factor for the Court to consider when deciding whether the named plaintiffs would fairly and adequately represent the putative class." *Id.* Likewise, "the continuing failure of plaintiff to properly and timely move for class determination also raises serious questions as to whether [s]he will fairly and adequately represent the class and protect their interests." *Walker v. Columbia Univ.*, 62 F.R.D. 63, 64–65 (S.D.N.Y. 1973).

        Here, plaintiff's counsel has a history of providing underwhelming representation and missing multiple deadlines and appearances. To begin, Mr. Sanders missed at least three Court imposed deadlines for filing the instant motion, culminating in the District Court admonishing him on the importance of meeting Court imposed deadlines. Indeed, U.S. District Court Judge Anne Donnelly warned plaintiff's counsel that failure to meet future deadlines could result in the dismissal of plaintiff's class claims. *See* Nov. 10, 2021 Dkt. Entry.[14]

        However, counsel's inadequacy is best highlighted by his failure to put forth evidence of a single aggrieved nursing mother in FDNY or retain any expert witnesses to testify in support of this motion or at any subsequent trial. *See* Dkt. No. 77. Indeed, other than defendants, Mr. Sanders only intends to call plaintiff and her husband as witnesses at trial. *See* Plaintiff's Initial

---

[14] Plaintiff's counsel also failed to provide Magistrate Judge Peggy Kuo with a position statement or defendants with a settlement demand in advance of the early settlement conference, as required by Judge Kuo's Individual Rules. Instead, Mr. Sanders claimed that he went on vacation after deciding that the conference would be a "waste of time." *See* Transcript of February 24, 2021 Conference, Dkt. No. 53, at 3:6-9; 11:12-15;12:8-11; 13:5-6; 14:7. In response, Judge Kuo held a telephonic status conference on February 19, 2021, in which plaintiff's counsel failed to appear, despite emails and calls from the parties and the Court that went unanswered. *See* February 19, 2021 short order Dkt. Entry. Thus, Judge Kuo held a second telephonic status conference on February 24, 2021 and reminded him of the importance of complying with all Court ordered deadlines. *See* Dkt. No. 53 at 22:15-18 ("when there's a court-ordered deadline, [you] need to comply with it. It is not optional. It is not advisory. It is a deadline.").

Disclosures, Ex. "Z." Therefore, certification must be denied. *See Jin*, 990 F.3d at 251 (affirming decision to decertify plaintiffs' class counsel based on counsel's failure to adequately respond to Court orders, apparent attempts to delay trial, and plan to only call two class members as trial witnesses).

Further, plaintiff admits by omission that her attorney does not have experience litigating class actions. *See* Pl. Memo. at pp. 11-12. Yet, Sanders' retainer agreement with plaintiff requires her to pay a $3,500 retainer fee and cover his legal fees and costs as they are incurred, and if plaintiff fails to pay each bill within 15 days of receiving Mr. Sanders' bills, he charges a monthly compounded interest of 1.5 percent. *See* Retainer and Billing Records at Ex. "Y." It also requires plaintiff to pay Sanders an unconscionable contingency fee of 35 percent if she were to prevail against defendants, most remarkably *after* the deduction of his fees. *See* Retainer at Ex. "Y." Such a retainer agreement is unenforceable and demonstrates his inadequacy to represent the class.

In *C.M. v. Syosset Cent. Sch. Dist.,* No. 11- CV-1402 (MKB) (GRB), 2013 U.S. Dist. LEXIS 114302, *25 (E.D.N.Y. Aug. 9, 2013), plaintiffs' retainer agreement provided for a 40 percent contingency fee in addition to a $15,000 retainer fee and the requirement to pay fees in increments of $10,000 as they were incurred. The Court noted that a 40 percent contingency fee, "standing alone, stretches the upward bounds of standard practice, as contingency fees generally do not exceed one-third." *C.M.*, 2013 U.S. Dist. LEXIS 114302, *26-27.

While there is no contingency fee cap in civil rights cases, the Supreme Court has held that "a reasonable attorney's fee is one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (internal citation and quotations omitted). In the circumstances here, like those in *C.M.*, plaintiff's retainer agreement constitutes a windfall to Mr. Sanders because it places the entire risk of litigation on

plaintiff. Indeed, the *C.M.* Court found that plaintiffs' retainer agreement was unreasonable and unenforceable because plaintiffs bore the risk of litigation. *C.M.*, 2013 U.S. Dist. LEXIS 114302, *25-27.[15] This is just one example of his inadequacy to represent the purported class.

Finally, Mr. Sanders' own history of pregnancy discrimination and failure to pay judgments or settlements to his clients is also disqualifying. In 2010, the N.Y. State Division of Human Rights found that Mr. Sanders and his law practice partner wrongfully discriminated against an attorney with their firm because of her pregnancy and awarded her $244,665. *Rocco v. Goldberg (In re Goldberg)*, No. 811-78915-reg, Chapter 11, Adv. Proc. No. 812-08099-reg, 487 B.R. 112, 118 (Bankr. E.D.N.Y. Jan. 29, 2013).

What's worse, Mr. Sanders failed to pay this judgment and other various settlements he won for his clients, culminating in having to appear in federal Bankruptcy Court. *Id.* After violating multiple Court orders to pay these judgments and missing numerous court appearances, U.S. Bankruptcy Judge Dorothy Eisenberg ordered federal Marshalls to arrest Mr. Sanders for contempt of court. *See* "Miriam Carey family's lawyer arrested over debts – Newsday," available at <u>https://www.newsday.com/long-island/suffolk/miriam-carey-family-s-lawyer-arrested-over-debts-g59474</u> (last visited on Oct. 14, 2022); *see also* "Lawyer representing DC crash mom arrested," available at <u>https://nypost.com/2013/10/15/lawyer-representing-dc-crash-mom-arrested/</u> (last visited on Oct. 14, 2022).

It would be antithetical to find that Mr. Sanders could adequately represent a class of women who allege, among other things, pregnancy discrimination. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2020 U.S. Dist.

---

[15] "In determining whether the terms of the attorneys' fees are fair, a high contingency fee is appropriate where the risk of nonrecovery rests with the attorney." *Id.* quoting *McGill v. City of Ottawa*, 773 F. Supp. 1473, 1475-76 (D. Kan. 1991) (citing *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1114 (7th Cir. 1982).

LEXIS 847, *109 (E.D.N.Y. Jan. 2, 2020) (the Second Circuit held that "a fundamental conflict … sapped class counsel of the incentive to zealously represent the latter," rendering "unitary representation of these plaintiffs . . . inadequate.") (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233, 236, and 240 (2d Cir. 2016)). Therefore, plaintiff's motion for class certification should be denied.

**POINT III**

**PLAINTIFF FAILS TO SATISFY RULE 23(B).**

**A.      Plaintiff Fails to Satisfy the Requirements of Rule 23(b)(3)**

Plaintiff asserts, in conclusory fashion, that she has satisfied the predominance and superiority requirements of Rule 23(b)(3). *See* Pl. Memo. at pp. 13-14. However, the predominance inquiry is "far more demanding" than the commonality inquiry, and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). The haphazard class that plaintiff lumped together is anything but "cohesive" considering how plaintiff's claims will proceed at trial. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 86 (2d Cir. 2015) (predominance inquiry may require consideration of how trial would be conducted).

Even if plaintiff established a *prima facie* case of discrimination, defendants are still afforded "a broad opportunity to present in rebuttal any relevant evidence that shows that it lacked such an intent." *City of New York*, 717 F.3d at 87 (emphasis added). As a result, a morass of individual questions will predominate over any common question in this case. For example: (1) the defenses presented at trial will differ depending on whether the class member requested a lactation accommodation, what type of accommodation she requested, and how FDNY accommodated each of them; (2) because informal accommodations were sometimes made by supervisors at various assignments and facilities prior to April 2019, each unit's criteria and

25

decision-making process for accommodating them will need to be analyzed separately; (3) defendants' rebuttal concerning the legitimate, business reasons for taking the actions they did with each class member will differ depending on each class member.

These thorny questions are the unavoidable result of plaintiff's unwieldy class and will subsume any common questions at trial. Thus, Rule 23(b)(3) certification is wholly unwarranted. *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 144 (S.D.N.Y. 2015); *Moore v. Publicis Grp. SA*, No. 11-cv-1279 (ALC) (AJP), 2014 U.S. Dist. LEXIS 185384 at *26-27 (S.D.N.Y. May 15, 2014) (individualized inquiries preclude a finding of predominance); *Oakley v. Verizon Communs., Inc.*, No. 09 Civ. 9175 (CM), 2012 U.S. Dist. LEXIS 12975, *43-45 (S.D.N.Y. Feb. 1, 2012) (holding same).

Further, individual trials are also unavoidable as to damages because plaintiffs have no way of providing damages on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (holding that "class action was improperly certified under Rule 23(b)(3)" because "Questions of individual damage calculations will inevitably overwhelm questions common to the class."). Individual questions, therefore, will predominate over any common questions.

In addition, Rule 23(b)(3) was intended to vindicate the rights of groups "who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617 (internal quotation omitted). Unlike other class actions, plaintiff cannot maintain that she would be unable to redress her claims on an individual basis. Indeed, plaintiff already filed an individual lawsuit, and the putative class members can follow suit. *Oakley*, 2012 U.S. Dist. LEXIS 12975, at *50 (FMLA leave cases "are not cases where it makes no economic sense for an individual to pursue his own claim"). In fact, the putative class members have every

ability to hire their own attorney and bring their own individual suits.[16] Therefore, plaintiff's motion should be denied.

## B.      Plaintiff Fails to Satisfy the Requirements for a Rule 23(b)(2) Class

Plaintiff fails entirely to demonstrate that she can satisfy the requirements of a Rule 23(b)(2) class seeking injunctive relief. Indeed, she does not even address this requirement in her motion for class certification, which must be fatal to her motion for class certification. Yet, plaintiff seeks injunctive relief for the purported class. Therefore, class certification must be denied.

Indeed, the *LeGrand* Court noted that, while plaintiffs claimed to seek injunctive relief, the only specific relief they requested was monetary. It held that, "[c]onsidering … plaintiffs' focus on significant compensatory and punitive damages, there exists little possibility that separate trials could lead to inconsistent injunctive relief." *LeGrand*, 1999 U.S. Dist. LEXIS 8020, *13-14. citing *Stoudt v. E.F. Hutton & Co., Inc.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988). This is the same situation here. Indeed, plaintiff's Complaint and motion for class certification fail to point to any specific injunctive relief that nursing mothers in FDNY should be entitled to. Therefore, for all these reasons, class certification should be denied.

---

[16] The *LeGrand* Court considered that the prospective class members earned an average of $47,318 a year, which was "enough for the Court to reasonably infer that each [putative class member] has the ability to retain an attorney either to join in the pending action or to file a separate suit, should she wish to do so." *LeGrand*, 1999 U.S. Dist. LEXIS 8020, *13-14 citing *Ansari v. New York Univ.*, 179 F.R.D. 112, 115 (S.D.N.Y. 1998). Here, plaintiff was an Incumbent Auto Mechanic, and employees currently under that title earn $347.20 per hour or $90,619.20 annually. *See* Nguyen Decl., Ex. "A," at ¶ 52. Plaintiff even admitted that she had a "lucrative career" as an FDNY Auto Mechanic. *See* Sanders Decl. at ¶ 75. Therefore, the prospective class members can retain an attorney and file their own suits; they don't need plaintiff's class claims to be certified. Accordingly, plaintiff's motion should be denied.

## <u>CONCLUSION</u>

**WHEREFORE**, defendant respectfully requests that plaintiffs' Motion for Class Certification be denied, together with such other and further relief as the Court deems just and proper.

Dated:      Bronx, New York
              November 3, 2022

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-149
New York, New York 10007-2601
(212) 356-2440
kbarker@law.nyc.gov

By:         /s/
           Kami Z. Barker
           Senior Counsel