UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
VANESSA FEELEY, on behalf of herself and a class :
of similarly situated individuals,                                 :
                                                                   :
                                        Plaintiff,                 :
                                                                   :
                        -against-                                  :
                                                                   :
THE CITY OF NEW YORK; MICHAEL RUBENS          :
BLOOMBERG, as Former Mayor; BILL de BLASIO,  :
as Mayor; MARTHA H. HIRST, as Former         :
Commissioner — Department of Citywide        :
Administrative Services; EDNA WELLS HANDY, as :
Former Commissioner — Department of Citywide :
Administrative Services; STACEY CUMBERBATCH, :
as Former Commissioner — Department of Citywide :
Administrative Services; LISETTE CAMILO, as  :
Commissioner — Department of Citywide        :
Administrative Services; NICHOLAS SCOPPETTA, :
as Former Commissioner — Fire Department City of :
New York; SALVATORE CASSANO, as Former       :
Commissioner - Fire Department City of New York; :
DANIEL A. NIGRO, as Commissioner, Fire       :
Department City of New York; MARK ARONBERG, :
as Assistant Commissioner, Fleet Services Division, :
Fire Department City of New York; ANDY       :
DIAMOND, as Executive Director, Fleet Services :
Division, Fire Department City of New York; LOUIS :
MORBELLI, as Director, Fleet Services Division, Fire :
Department City of New York; HUGH            :
MCALLISTER, as Deputy Director, Fleet Services :
Division, Fire Department City of New York and :
PATRICK MURPHY, as Supervisor, Fleet Services :
Division, Fire Department City of New York each :
sued individually and in their official capacities as :
employees of Defendant THE CITY OF NEW      :
YORK,                                        :
                                                                   :
                                        Defendants.                :
------------------------------------------------------------------ x

**REPORT AND
RECOMMENDATION**

20-CV-1770 (AMD)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Vanessa Feeley ("Plaintiff") brought this action against the City of New York, Michael Rubens

Bloomberg, Bill de Blasio, Martha H. Hirst, Edna Wells Handy, Stacey Cumberbatch, Lisette Camilo,

Nicholas Scoppetta, Salvatore Cassano, Daniel A. Nigro, Mark Aronberg, Andy Diamond, and Patrick Murphy (collectively, "City Defendants"); and Louis Morbelli and Hugh McAllister ("Non-City Defendants," and together with City Defendants, "Defendants"), alleging discrimination based on her need to express breast milk at work.  (*See* Compl., Dkt. 1.)  Plaintiff brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*  (*Id.* at 1-2.)

Before the Court on referral from the Honorable Ann M. Donnelly is Plaintiff's Motion for Class Certification.  ("Motion," Dkt. 80.)  For the reasons stated herein, I respectfully recommend that the Motion be denied.

**FACTUAL BACKGROUND**

**I.     Plaintiff's Experience at the New York City Fire Department**

Plaintiff was hired on or about September 8, 2013 by Defendant City of New York ("City") to work as an Auto Service Worker for the New York City Fire Department ("FDNY") Fleet Services Division.  (Compl. ¶ 147.)  In 2016, she was promoted to Auto Mechanic Incumbent, and in 2017, she became a permanent Auto Mechanic.  (*Id.* ¶¶ 150, 154; Declaration of Kami Z. Barker ("Barker Decl.") ¶¶ 36-37, Dkt. 89.)

On April 27, 2018, Plaintiff went on maternity leave using the Family Medical Leave Act ("FMLA").  (Compl. ¶ 160.)  When she returned to work on July 23, 2018, she told Deputy Director of Fleet Services Hugh McAllister that she would need to express breast milk in the workplace, and he responded, "[W]e [a]re going to wing it."  (*Id.* ¶ 161; Vanessa Feeley Deposition Transcript ("Feeley

Tr.") 45:3-10, Ex. Q to Barker Decl., Dkt. 89-17; Barker Decl. ¶ 43.)[1]  Although Plaintiff never asked whether FDNY had a formal lactation policy, based on McAllister's statement, she assumed it did not. (Feeley Tr. 58:9-59:9.)  Plaintiff testified that she "wasn't overly concerned" and "didn't mind figuring it out as [they] go."  (*Id.* 45:23-46:4.)  Plaintiff told McAllister that "periodically throughout the day [she] would need to stop to pump and . . . would need a place to do so," and he said that "he would find a place for [her]."  (*Id.* 46:6-13.)

Plaintiff was given an unused office with a lockable door where she could express breast milk, and there was a refrigerator on the shop floor where she could store the expressed milk.  (*Id.* 46:20-25, 47:3-15.)  Plaintiff expressed milk twice a day for approximately 30 to 45 minutes.  (*Id.* 10:4-5.)  One of the breaks that she took to express milk was from 9:15 a.m. to 9:45 a.m. (*See id.* 47:16-22, 68:9-11.) Plaintiff "felt comfortable" in the room expressing milk and did not "have any issues with the ability to express milk" during this time.  (*Id.* 47:1-2, 47:13-15, 49:11-16.)

In mid-September 2018, Executive Director of Fleet Services Andy Diamond and Director of Fleet Services Louis Morbelli gave Plaintiff a form to fill out and told her that she had to create a schedule of when she needed to express milk and submit it for approval.  (Compl. ¶¶ 176-77; Feeley Tr. 49:19-25, 50:9.)  Plaintiff filled out the form, requesting two lactation breaks, one from 9:00 a.m. to 9:45 a.m. and one over her lunch break from 12:00 p.m. to 12:30 p.m.[2]  ("Pl. App. for Leave to Express Breast Milk," Ex. X to Barker Decl., Dkt. 89-24.)  All mechanical staff were given a fifteen-minute paid coffee break from 9:00 a.m. to 9:15 a.m. and a thirty-minute unpaid lunch break from 12:00 p.m. to 12:30 p.m.  (Feeley Tr. 21:21-22:10; Barker Decl. ¶ 34.)  Thus, Plaintiff was paid from

---

[1] Plaintiff described McAllister as the "deputy director at the 35th Street shop" and the supervisor of her direct supervisor Patrick Murphy.  (Feeley Tr. 45:9-15.)

[2] Plaintiff testified that her first break was from 9:00 a.m. to 9:30 a.m., but the application that she filled out indicates that it was from 9:00 a.m. to 9:45 a.m.  (*See* Feeley Tr. 52:19-53:2.)

9:00 a.m. to 9:15 a.m. for the coffee break, but not for the following thirty minutes of her lactation break.  (Feeley Tr. 53:3-8.)

Plaintiff was also told that she needed to clock out of City Time, the City's electronic timekeeping system, at 9:15 a.m. when her coffee break ended.  (*Id.* 66:21-67:13, 72:19-73:4; Compl. ¶¶ 176-77.)  Because Plaintiff would be in the middle of pumping at 9:15 a.m., Plaintiff was "forced to parade in front of her male and female co-workers" "often times with the breast pump apparatus still attached to her breasts" to use the hand scanner to clock out of City Time.  (Compl. ¶ 180; *see* Feeley Tr. 66:21-68:2.)  Plaintiff's supervisor Murphy told her, "If you continue to decline to sign out of City Time, you will have an issue."  (Compl. ¶ 179.)  Plaintiff states that "her co-workers do not have to complete a schedule for approvals to take personal breaks or clock in and out of City Time."  (*Id.* ¶¶ 176-77, 179, 181.)

Around this time, the office that Plaintiff was using to express breast milk became occupied. (Feeley Tr. 61:11-14.)  Plaintiff began to use the Fleet Services Division conference room if it was available.  (*Id.* 61:14-16.)  Plaintiff testified that she did not mind using an office or conference room (*id.* 61:11-18, 46:20-47:2), but when the conference room was not available, she had to pump in other locations, including a female bathroom, storage closet, her vehicle on one or two occasions, and a cubicle.  (*Id.* 62:21-63:8, 63:16-18; Compl. ¶¶ 162, 64-66.)  On one occasion, Assistant Commissioner of Fleet Operations Mark Aronberg entered the office where Plaintiff was expressing breast milk, interrupting her.  (Compl. ¶ 174; Feeley Tr. 60:6-9.)

Plaintiff alleges that, as a result of not having an appropriate location to express milk, she "experienced severe engorgement, [m]astitis, [e]motional [d]istress, and cessation of her milk supply." (Compl. ¶ 162.)

Plaintiff also asserts that Defendants "refused to provide her with reasonable accommodations such as assignments conducive to her physical limitations, equipment changes or modifications, [and]

4

assignments to ensure her legal right to express milk during work hours . . . ."  (*Id.* ¶ 191.)  When she returned to work, Plaintiff was "often isolated . . . to troubleshoot and repair ambulances, pumpers, other vehicles and associated equipment on her own although the job specification required two persons to safely perform the assignment."  (*Id.* ¶ 168.)  Plaintiff also claims that she was monitored to ensure she completed her work and was pressured to take overtime shifts, while "her male co-workers are not treated in such manner."  (*Id.* ¶¶ 169-70.)

Plaintiff asserts that Defendants retaliated against her for complaining about her treatment. (*Id.* ¶¶ 146, 203.)  In November 2018, Plaintiff was directed to repair a truck that was soon to be condemned, "as a form of harassment."  (*Id.* ¶¶ 182-87.)

On December 14, 2018, the same day Plaintiff was approved for a long-term childcare leave of absence, she received a negative performance evaluation, which stated that she "works too slowly" and "fails to meet department standards."  (*Id.* ¶¶ 188-89.)  Plaintiff alleges that Defendants "constantly monitored her, gave her difficult assignments and rated her below standards because she complained about her treatment in the workplace and for failing to accommodate her legal right as a nursing mother to express milk."  (*Id.* ¶ 190.)

Plaintiff testified that she never complained to FDNY's Equal Employment Opportunity ("EEO") Office or Human Resources.  (Feeley Tr. 78:2-5.)  She also testified that there was never a time that she was not provided with an accommodation to express milk at work.  (*Id.* 95:9-12.)

Plaintiff attended a Women of the Bravest meeting with other FDNY female employees after she returned from FMLA leave and told them about the environment in the Fleet Services Division. (*Id.* 80:15-81:9.)  Plaintiff stated that some of the other employees "seemed genuinely surprised" and that "there was a lot of shock" at her treatment.  (*Id.* 80:22-81:4.)  Plaintiff does not work with any female mechanics.  (*Id.* 37:6-7.)  Plaintiff has not encountered another female FDNY employee who

expressed breast milk in the workplace or an employee who had a negative experience regarding her ability to express breast milk in the workplace.  (*Id.* 92:21-93:3.)

Plaintiff resigned from her position on October 26, 2019 while she was on long-term childcare leave.  (Compl. ¶ 192.)

On or about January 23, 2019, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 4.)  As of February 22, 2023, Plaintiff had not received a Right to Sue Letter.  (*See* Feb. 22, 2023 Oral Argument Transcript ("Oral Arg. Tr.") 36:12-21, Dkt. 93.)

## II.    FDNY and the City's Lactation Policies

FDNY has approximately 17,300 permanent employees in approximately 186 different job titles.  (Declaration of Don Nguyen ("Nguyen Decl.") ¶ 4, Ex. A to Barker Decl., Dkt. 89-1; *see* Compl. ¶ 11.)  It owns and operates approximately 3,050 facilities.  (Nguyen Decl. ¶ 4.)  The Fleet Services Division has four different locations.  (Deposition Testimony of Patrick Murphy ("Murphy Tr.") 13:5-6, Ex. T to Barker Decl., Dkt. 89-20.)

According to Plaintiff, approximately 476 female FDNY employees took childcare leave between August 15, 2007 and May 12, 2022.  (Declaration of Eric Sanders ("Sanders Decl.") ¶ 62, Dkt. 81.)  Defendants believe that not all of them returned to work.  (Oral Arg. Tr. 86:11-14.)

Beginning on August 15, 2007, the New York Labor Law ("NYLL") required employers to "provide reasonable unpaid break time or permit an employee to use paid break time or meal time" to express breast milk, and to "make reasonable efforts to provide a room or other location, in close proximity to the work area, where an employee can express milk in privacy."  NYLL § 206-c. Guidelines issued by the New York State Department of Labor state that the location may not be a bathroom.  (*See* Guidelines Regarding the Rights of Nursing Mothers to Express Breast Milk in the Work Place at 3 (ECF pagination), Ex. 9 to Sanders Decl., Dkt. 81-9.)

On March 23, 2010, Section 7 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, was amended to provide lactating employees with essentially the same rights as provided under NYLL § 206-c. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 4207(r), 124 Stat. 119 (2010). The amendment required that employers provide "a reasonable break time for an employee to express breast milk . . . each time such employee has need to express the milk; and [] a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." *Id.* § 4207(r)(1).

On October 2, 2013, the City enacted Local Law 78, the Pregnant Workers Fairness Act ("PWFA"), which amended the NYCHRL and required, *inter alia*, that, unless it would impose an undue hardship, employers provide nursing employees with "a lactation room in reasonable proximity to such employee's work area; and [] a refrigerator suitable for breast milk storage in reasonable proximity to such employee's work area." N.Y.C. Admin. Code § 8-107(22)(b)(i); (*see* NYC Commission on Human Rights Legal Enforcement Guidance at 3 (ECF pagination), Ex. 11 to Sanders Decl., Dkt. 81-11.) It also required that employers develop a written policy regarding the provision of a lactation room and distribute it to employees upon hiring, and that lactation breaks be provided consistent with NYLL § 206-c. N.Y.C. Admin. Code § 8-107(22)(c)(i), (i)(4).

According to Don Nguyen, the Assistant Commissioner in FDNY's EEO Office since 2015, FDNY had a formal lactation policy since 2010, which guaranteed nursing employees the right to take lactation breaks in a clean and private space other than a bathroom and in close proximity to their workstation. (Nguyen Decl. ¶¶ 1, 12.) FDNY adopted this policy from the City's Department of Citywide Administrative Services ("DCAS"). (*Id.* ¶ 12.)

FDNY Employee Bulletins were mailed to employees with their paychecks every two weeks. (Aurora Gabriel Perez Deposition Transcript ("Gabriel Perez Tr.") 16:13-16, 20:21-24, Ex. L to Barker Decl., Dkt. 89-12.) Among them were Employee Bulletins with information about the lactation policy

published on January 7, 2010 and June 15, 2017. (Nguyen Decl. ¶ 20; Ex. E to Barker Decl. at 3 (ECF pagination), Dkt. 89-5; Ex. F to Barker Decl. at 8 (ECF pagination), Dkt. 89-6.) The January 7, 2010 bulletin references the NYLL amendment. (Ex. E to Barker Decl. at 3 (ECF pagination); *see* Ex. 12 to Sanders Decl., Dkt. 81-12.)

DCAS also provided yearly training for City employees regarding reasonable accommodations. (Belinda French Deposition Testimony ("French Tr.") 24:6-25:16, Ex. 18 to Sanders Decl., Dkt. 81-18.)

From 2010 until March 2019, employees who went on maternity or childcare leave would contact the FDNY's Leave Unit at least ten days before they returned to work, and the Leave Unit would talk with them about their right to express breast milk in the workplace. Upon the employee's return, she was provided with an application to express breast milk. If the employee intended to express breast milk at work, Human Resources talked with her and someone in her workplace to find an appropriate location in which she could express milk. (Nguyen Decl. ¶¶ 25-29.)

Between 2010 and March 2019, FDNY maintained a record of Express Breast Milk Applications given to employees, which indicated whether an employee requested an accommodation to express milk. (*See id.* ¶¶ 28-29.) According to the FDNY chart, approximately 250 employees were given applications to express breast milk and approximately 72 requested an accommodation. (*See* "Express Breast Milk Applications," Ex. 17 to Sanders Decl., Dkt. 81-17; Barker Decl. ¶ 26.) Employees requested different types of accommodations, including lactation breaks in the morning and/or afternoon, during mealtime, or as a separate unpaid break. (*See* Oral Arg. Tr. 55:13-56:22; Express Breast Milk Applications.) The employees who requested lactation accommodations worked at several different FDNY locations and held approximately 20 different job titles. (Nguyen Decl. ¶ 38.)

On November 17, 2018, the New York City Council amended the definition of "lactation room" in the New York City Administrative Code to include a private place, other than a restroom, that "includes at minimum an electrical outlet, a chair, a surface on which to place a breast pump and other personal items, and nearby access to running water."  N.Y. City Loc. L. No. 185 Int. No. 879-A § 1 (2018).

Before the law went into effect on March 17, 2019, *see id.*, Nguyen reviewed it and advised FDNY to update its lactation policy.  (Nguyen Decl. ¶¶ 13-15.)  FDNY promulgated a new policy in March 2019 and officially issued an updated version in May 2019.  (*Id.* ¶¶ 16-17.)  FDNY's EEO Office took over handling requests for lactation accommodations.  (*Id.* ¶¶ 30-31.)  Pursuant to the new policy, before a female employee returned to work from maternity leave, the Reasonable Accommodation Unit ("RAU") of the EEO Office provided her with information on her right to express breast milk in the workplace.  If the employee intended to express milk at work, she was given a form to fill out.  (*Id.*)  When the form was returned, the RAU checked previously designated lactation rooms and pods to determine whether they complied with the New York City Administrative Code's requirements, asked the employee the frequency and times that she anticipated expressing breast milk, and consulted with the employee's supervisor on the accommodations that would be provided.  (*Id.* ¶ 34.)

FDNY's policy dated May 1, 2019 was included in the Civilian Resource Manual given to new employees and posted on FDNY's Intranet. (*Id.* ¶ 21; *see* Lactation Policy, Ex. 15 to Sanders Decl. at 1, Dkt. 81-15.)[3]  The policy states, *inter alia*, that FDNY "provid[es] reasonable break times and a lactation room or other location in close proximity to the work area where an employee can express milk in privacy."  (Lactation Policy at 1.)  A "lactation room" is defined as a "sanitary place, not a

---

[3] Defendant Murphy testified that in the Fleet Services Division location where he works, there is currently a posting on the bulletin board regarding the rights of women to express milk in the workplace. (Murphy Tr. 16:13-20.)

restroom, that can be used to express milk shielded from view and free from intrusion, that includes an electrical outlet, a chair, a surface on which to place a breast pump and other personal items and nearby access to running water." (*Id.*)  The policy also provides that employees can access and submit a request for accommodation to express milk on the FDNY Intranet, and that the EEO Office shall notify employees on or recently returned from childcare leave of this procedure.  (*Id.*)  An Employee Bulletin providing guidance on the policy was created on May 2, 2019 and is included in a package sent to employees on childcare leave.  (*See* Nguyen Decl. ¶ 32; Workplace Rights for Nursing Employees, Ex. 14 to Sanders Decl., Dkt. 81-14.)

Once the EEO Office took over accommodation requests in March 2019, it provided Express Breast Milk Applications only to those employees who indicated that they wanted to express milk at work.  (*See* Express Breast Milk Applications at 7 (ECF pagination); Nguyen Decl. ¶ 31.)  The 19 employees who requested an accommodation between April 2019 and March 2021 worked at 16 different locations.  (Barker Decl. ¶ 29; Express Breast Milk Applications at 7 (ECF pagination).)

Thus, between January 12, 2010 and March 17, 2021, a total of approximately 269 applications to express breast milk at work were given to FDNY employees (Express Breast Milk Applications; *see* Sanders Decl. ¶ 63), and approximately 91 employees requested lactation accommodations.  (Nguyen Decl. ¶¶ 38, 41; *see* Express Breast Milk Applications.)  All requests for accommodation were granted. (Nguyen Decl. ¶ 38; *see* Express Breast Milk Applications.)  According to Nguyen, no employee who requested a lactation accommodation, including Plaintiff, ever complained of not being accommodated or of discrimination.  (Nguyen Decl. ¶ 43.)  Plaintiff was the only Auto Mechanic to request a lactation accommodation from January 12, 2010 to March 2021.  (*Id.* ¶ 38; *see* Express Breast Milk Applications.)

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on April 10, 2020. (Compl.) Claims I through III allege discrimination, hostile work environment, and retaliation in violation of Title VII. Claims IV through VI allege discrimination, hostile work environment, and retaliation in violation of Section 1983. Claim VII is a Monell claim brought under Section 1983. Claims VIII through X allege discrimination, hostile work environment, and retaliation in violation of the NYSHRL. And claims XI through XIII allege discrimination, hostile work environment, and retaliation in violation of the NYCHRL.

Plaintiff filed the Motion for Class Certification and supporting documents on August 21, 2022. (*See* Motion; Sanders Decl.; Plaintiff's Memorandum of Law in Support of Motion ("Pl. Mem. of Law"), Dkt. 82.) City Defendants filed their opposition and supporting documents on November 3, 2022. (*See* City Defendants' Memorandum of Law in Opposition to Motion ("City Def. Mem. of Law"), Dkt. 90; Barker Decl.) Non-City Defendants did not file an opposition.

Oral argument on the Motion was held on February 22, 2023. (Minute Entry dated Feb. 22, 2023; Oral Arg. Tr.)

## PLAINTIFF'S CLASS ALLEGATIONS

Plaintiff moves to certify a class under Rule 23(a) and 23(b)(2) comprised of:

> [A]ll female employees that have or will be employed with Defendant THE CITY OF NEW YORK and assigned to the Fire Department City of New York (FDNY) from August 15, 2007, to the date of judgment that have the need or chooses to express milk during work hours (the "Nursing Mothers Class").

(Compl. ¶ 7; Motion at 1-2.) Plaintiff argues broadly that she "raises questions regarding Defendant THE CITY OF NEW YORK, DCAS and the FDNY failing to protect the legal rights of nursing mothers to express milk in the workplace in contravention of the FLAS [sic], 206-c and the PWFA," (Pl. Mem. of Law at 8, 10, 11), without specifying which of the allegations in her 57-page Complaint constitute such failures.

At oral argument, Plaintiff's counsel stated that "[Plaintiff's] claims are about the fact that the fire department did not notify its employees of this available benefit and either women didn't take advantage of it because they didn't know it was available or they were discouraged from taking or even asking about it because they didn't think they had that right."  (Oral Arg. Tr. 13:21-14:1; *see also* Compl. ¶¶ 109-28, 132-33.)

Counsel also confirmed that Plaintiff seeks to certify the Nursing Mothers Class only with respect to her discrimination claims, not those related to hostile work environment or retaliation.  (*See* Oral Arg. Tr. 33:25-34:7.)

## DISCUSSION

### I.    Legal Standard

A class is appropriate only if it meets the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure.  A plaintiff seeking certification under Rule 23 has the burden to establish (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation, (5) superiority of the class action over other procedures, and (6) predominance.  *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016); *see* Fed. R. Civ. P. 23(a), (b)(3).  The Second Circuit has also recognized an implied requirement of ascertainability.  *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." (citation omitted)); *see McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009).

In a motion for class certification, the moving party has the burden of satisfying all the requirements of Rule 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) [hereinafter *Dukes*].  "Rule 23 does not set forth a mere pleading standard" and requires that the party moving for class certification "affirmatively demonstrate [her] compliance with the Rule—that is, [she] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id.* at 350 (emphasis omitted).  To certify a class, a district court must definitively assess

each class certification element and find that each requirement is "established by at least a preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)).

A plaintiff must present some evidence and cannot rest on pleadings alone for class certification. *Cokely v. N.Y. Convention Ctr. Operating Corp.*, No. 00-CV-4637 (CBM), 2003 WL 1751738, at *3 (S.D.N.Y. Apr. 2, 2003). "[A] court must only certify a class 'after a rigorous analysis' reveals that the 'prerequisites of Rule 23(a) have been satisfied,' an analysis that often requires the courts to touch on 'aspects of the merits in order to resolve preliminary matters.'" *Loc. 3621, EMS Officers Union v. City of N.Y.*, No. 18-CV-4476 (LJL), 2022 WL 17175798, at *7 (S.D.N.Y. Nov. 22, 2022) (quoting *Dukes*, 564 U.S. at 350–52 (citation omitted)); *see Harris v. Initial Sec., Inc.*, No. 05-CV-3873 (GBD), 2007 WL 703868, at *3 (S.D.N.Y. Mar. 7, 2007) ("A 'Title VII class action, like any other class action, may only be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982) [hereinafter *Falcon*])).

## II.    Commonality

"As is true in many Title VII class actions, the 'crux of this case is commonality.'" *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 274 (S.D.N.Y. 2018) (quoting *Dukes*, 564 U.S. at 349). Commonality under Rule 23(a) requires that class members' complaints share a common question of law or of fact. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Not only must the *question* be shared, but there must also be a common *answer* that is capable of "classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (emphasis omitted) (quoting *Dukes*, 564 U.S. at 350).

To certify a class based on claims of disparate treatment, plaintiffs are not required to "identify a specific company-wide employment practice responsible for the discrimination," but they "must provide evidence of a 'systemwide pattern or practice' of pervasive discrimination against the class, such that the discrimination is 'the regular rather than the unusual practice.'" *Kassman*, 416 F. Supp. 3d at 281 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). A plaintiff can show that the defendants "engaged in 'widespread acts of intentional discrimination against individuals,' or that 'intentional discrimination was [the defendant's] standard operating procedure.'" *Richardson v. City of N.Y.*, No. 17-CV-9447 (JPO), 2017 WL 1910689, at *9 (S.D.N.Y. May 12, 2021) (alteration in original) (quoting *Reynolds v. Barrett*, 685 F.3d 193, 203 (2d Cir. 2012) (citation and internal quotation marks omitted)).

"[T]here is a 'wide gap' between an individual's claim that [she] is the victim of a discriminatory practice, and 'the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact . . . .' To bridge that gap, the plaintiff 'must prove much more than the validity of [her] own claim.'" *Harris*, 2007 WL 703868, at *4 (quoting *Falcon*, 457 U.S. at 157-58).

A plaintiff may bridge the gap by offering "[s]ignificant proof" that the defendant "operated under a general policy of discrimination." *Dukes*, 564 U.S. at 352 (alteration in original) (quoting *Falcon*, 457 U.S. at 159 n.15). Such proof may take the form of "significant statistical" evidence or anecdotal evidence. *See, e.g.*, *Boyd v. Interstate Brands Corp.*, 256 F.R.D. 340, 342-43 (E.D.N.Y. 2009) (considering statistical evidence and affidavits submitted by plaintiff to determine if commonality of a proposed class exists); *Hnot v. Willis Grp. Holdings Ltd.*, 228 F.R.D. 476, 484 (S.D.N.Y. 2005) ("Courts do have discretion to require or rely on anecdotal evidence, but they commonly do so where the statistical evidence is weak."); *Cokely*, 2003 WL 1751738, at *3 (finding that where statistically significant evidence is not available, "plaintiffs should compile sworn statements from a large enough sample of

14

plaintiffs to demonstrate that common issues exist").  To be sufficient, the statistical and anecdotal evidence must "expose 'the kind of gross disparities that on their face would suggest discriminatory intent.'"  *Richardson*, 2017 WL 1910689, at *9 (quoting *Kassman*, 416 F. Supp. 3d at 282); *see Boyd*, 256 F.R.D. at 362 ("[T]he anecdotal evidence must be detailed, persuasive, and must 'by itself support an inference' of pervasive and systemic discrimination." (quoting *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 266-67 (S.D.N.Y. 2007))).

"The inquiry to determine whether a plaintiff may proceed with a pattern and practice claim overlaps with proof of commonality for purposes of Rule 23." *Loc. 3621*, 2022 WL 17175798, at *11.

Alternatively, evidence of a "single, definable policy" of discrimination that applies to all class members is also sufficient to establish a common question warranting class treatment.  *See R. A-G ex rel R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*, No. 12-CV-960S, 2013 WL 3354424, at *11 (W.D.N.Y. July 3, 2013), *aff'd*, 569 F. App'x 41 (2d Cir. 2014) (citation to summary order).  However, even where a systemic failure has been alleged, a plaintiff must still present more than conclusory allegations.  *See id.* at *9 ("Notably, although systemic violations 'lend themselves well to class action treatment,' mere conclusory allegations of such violations will not automatically satisfy Rule 23(a)'s commonality requirements." (quoting *J.G. ex rel Mrs. G v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir. 1987))).

In seeking to certify a class consisting of "all female employees that have or will be employed with [FDNY] . . . from August 15, 2007 . . . that have the need or chooses to express milk during work hours," Plaintiff contends that Defendants "have engaged in a pattern, practice and policy of failing and refusing to provide nursing mothers with reasonable accommodations such as return to work assignments, assignments conducive to their physical limitations, equipment changes or modifications [to] assignments to ensure their legal right to express milk during work hours is protected and a proper location to express milk."  (Pl. Mem. of Law at 3.)  She also states that, "since August 15, 2007, they

have had to express milk in-front of other male and female employees, pump in a female bathroom, pump in the female locker room, pump in department vehicles, pump in other department facilities, pump in their personal vehicles, pump in bathrooms throughout the neighborhood, or cease to pump." (*Id.*)

In addition, although not stated in the Motion or supporting memorandum of law, Plaintiff's counsel raised the argument during oral argument that Defendants failed to give proper notice to proposed class members about their legal lactation rights.

### A. *Failing to Reasonably Accommodate Nursing Mothers*

Plaintiff fails to show commonality with regard to her allegation that Defendants did not provide reasonable accommodations related to work assignments.  First, Plaintiff does not articulate what requests for accommodations she made and in what way they were denied.  For example, there is no dispute that she was given light duty while she was pregnant (*see* Feeley Tr. 55:7-15), but she does not state whether she requested this or any other work assignment accommodation when she returned from FMLA leave.  Plaintiff's only allegations regarding work assignments after she returned to work are that she was "often" directed to troubleshoot and repair vehicles by herself despite safety measures requiring two people, and that she was assigned to repair a vehicle that was "soon to be condemned," which she characterized as "a form of harassment."[4]  (Compl. ¶¶ 168, 182-87.)

Assuming, *arguendo*, that Defendants discriminated against her by failing to provide reasonable accommodations related to her work assignments, Plaintiff fails to present any evidence that there was a policy or practice within the FDNY that discriminated against nursing mothers by denying them reasonable work assignment accommodations.  While she describes assignments she received, including one specific assignment that she believed was harassing, she does not articulate a policy or

---

[4] Plaintiff also claims that she was monitored and pressured to take overtime shifts, in contrast to how her male co-workers were treated (Compl. ¶¶ 169-70), but these allegations do not appear to relate to claims that she failed to receive reasonable accommodations relating to work assignments as a lactating employee.

widespread practice of this manner of assignment or of denying reasonable accommodation requests by lactating employees. Moreover, she fails to allege, in non-conclusory terms, or provide any evidence that any other lactating employee was denied reasonable accommodations with respect to work assignments.

Plaintiff similarly fails to meet her burden of showing commonality as to her allegations that Defendants engaged in discrimination by not providing adequate lactation locations. Although she makes generalized allegations about FDNY's policy of failing to provide nursing women with appropriate locations to express milk, Plaintiff fails to describe what lactation accommodations she requested which Defendants denied. For example, Plaintiff testified that whenever she was unable to pump in a conference room or office, she was always given a place to express milk, even if it was a bathroom, a storage closet, her vehicle, or a cubicle. To the extent that Plaintiff alleges she should not have had to use a bathroom or these other locations to express milk, she does not describe the circumstances leading to her using them. Plaintiff alleges that she often had to walk in view of her co-workers with the pump still attached to her body in order to clock out of CityTime. However, she chose the time period between 9:00 a.m. and 9:45 a.m. to express milk, even though it overlapped with the 15-minute coffee break afforded all mechanical staff. She seems to imply that she should not have had to interrupt her pumping in order to enter her time in CityTime in a public location, but Plaintiff does not state what accommodation she requested that was denied. Moreover, Plaintiff also fails to articulate why the accommodations she did receive were inadequate under the laws that existed at the time, which required only that FDNY make reasonable efforts to provide nursing employees with a lactation location that was private, not a restroom, and close to their work station.

Even if Defendants denied Plaintiff an appropriate lactation location, she fails to allege that any other nursing mother employees of FDNY faced similar discrimination. To the contrary, Plaintiff testified that she is unaware of any other female FDNY employee who expressed milk in the

17

workplace, let alone any who had a negative experience doing so.  (Feeley Tr. 92:21-93:3.)  Plaintiff has not produced a single affidavit or anecdotal evidence from any other nursing FDNY employees describing their experiences with lactation accommodations.  Nor has she produced statistical evidence that supports the Motion.  The evidence submitted to the Court shows that approximately 476 female FDNY employees took childcare leave between August 15, 2007 and May 12, 2022, and approximately 269 were given applications to express breast milk in the workplace between January 12, 2010 and March 17, 2021 when they returned to work.  Of those, approximately 91 employees requested lactation accommodations and every one of their requests was granted.  Plaintiff does not refute this evidence or make any non-conclusory allegations about discriminatory conduct toward other nursing mothers.

Finally, Plaintiff seems to allege that the lack of an agency-wide written lactation policy was itself a form of discrimination.  She suggests that proposed class members were subject to the treatment and practices of their supervisors, such as when McAllister stated that they would "wing it."  However, granting discretion to lower-level supervisors cuts against a finding of commonality.  "Typically, an employer's policy of 'allowing discretion by local supervisors over employment matters' will not present questions and answers common to a large class."  *Loc. 3621*, 2022 WL 17175798, at *8 (quoting *Richardson*, 2021 WL 1910689, at *7 (citation omitted)); *see Dukes*, 564 U.S.at 355; *but see, e.g.*, *Latino Officers Ass'n City of N.Y. v. City of N.Y.*, 209 F.R.D. 79, 88–89 (S.D.N.Y. 2002) (finding "[t]he delegation of discretionary authority to supervisors for disciplinary purposes constitutes a policy or practice sufficient to satisfy the commonality requirement," but noting that "class certification would not be warranted absent some showing that the challenged practice is causally related to a pattern of disparate treatment or has a disparate impact." (citation omitted)).

To the extent Plaintiff alleges that McAllister, Diamond, Morbelli, and Murphy enacted policies or engaged in practices that were discriminatory, she does not allege that they had any

interaction with or control over employees outside the Fleet Services Division.[5]  *See Moore v. Publicis Grp. SA*, No. 11-CV-1279 (ALC)(AJP), 2014 WL 11199094, at *6 (S.D.N.Y. May 15, 2014) (finding plaintiffs failed to establish commonality where they failed to link one male supervisor's harmful behavior to other class members "such that his disgraceful attitude and behavior may be extrapolated to them").  And within Fleet Services, Plaintiff was the only nursing mother.

Thus, Plaintiff fails to present statistical or anecdotal evidence of widespread intentional discrimination or that discrimination was FDNY's standard operating procedure.  Without such evidence, Plaintiff's proposed question of whether FDNY failed to reasonably accommodate nursing employees is not capable of class wide resolution.  *See, e.g.*, *Cokely*, 2003 WL 1751738, at *3-4 (finding plaintiffs had not established commonality or typicality of proposed class where plaintiffs had not produced expert statistical analysis or a large number of sworn statements establishing common issues of fact).

### B.  Failure to Provide Notice of Rights

Plaintiff argues what appears to be a separate basis of discrimination, that the Nursing Mothers Class members were not informed of their rights to express breast milk while other employees were informed of the benefits to which they were entitled.  At oral argument, Plaintiff's counsel stated, "it's disparate because if you're entitled to a benefit as an employee, whether you're male or female, you should have notice of it.  You should have the obligation to decide as an employee whether you want to use the benefit or not use the benefit."  (Oral Arg. Tr. 21:3-7.)

Setting aside whether Plaintiff has properly alleged discrimination on this basis, she fails to establish commonality with regard to this claim.

---

[5] Indeed, Plaintiff states that when she told women outside of the Fleet Services Division of her experience expressing milk at work, they were shocked and surprised, a reaction which would tend to indicate that the practices Plaintiff contends existed within the Fleet Services Division did not extend beyond it.

Plaintiff does not describe how she was discriminated against through a failure to be notified of her lactation rights.  FDNY reports that she was among those whom the department notified of their right to request lactation accommodations.  Plaintiff's actions appear to confirm this, because on September 14, 2018, she filled out and signed an Express Breast Milk Application, requesting two specific times during the workday for expressing breast milk.  (*See* Pl. App. for Leave to Express Breast Milk; Feeley Tr. 51:18.)

Plaintiff details various laws and appears to contend that they granted her and other nursing mothers specific rights which the FDNY failed to tell them about.  She does not state, however, what she was told and not told, and she does not specify the rights she later discovered that Defendants failed to inform her about or how any such omissions constitute discrimination.  To the extent she claims disparate treatment, she does not describe how others outside her protected class were treated with regard to notification about the rights available to them.

Even assuming that Plaintiff was discriminated against because she received inadequate notification of her rights, she fails to show a systemwide pattern or practice of pervasive discrimination against the class, that Defendants engaged in widespread acts of intentional discrimination, or that intentional discrimination was Defendants' standard operating procedure.  For example, while Plaintiff states that she did not speak with the Leave Unit before returning to work, she presents no evidence that other similarly situated women, *i.e.*, nursing mothers, likewise did not speak with the Leave Unit. When pressed about her failure to present evidence of class-wide discrimination based on failure to notify, Plaintiff argued that the lack of evidence that other lactating employees were informed of their rights is itself evidence of a discriminatory practice.  (Oral Arg. Tr. 28:13-17, 29:3-24, 40:3-4 ("[L]ack of evidence is evidence of the violation of the act.").)

The record is not completely devoid of evidence, but that evidence shows that the FDNY did notify its employees of their lactation rights.  The FDNY mailed Employee Bulletins to its employees

with their paychecks, and the January 7, 2010 and June 15, 2017 editions contained information about the lactation policy, including changes in the law. In addition, there is evidence that between 2010 and March 2019, the FDNY's Leave Unit spoke with employees on maternity or childcare leave to inform them of their right to express breast milk in the workplace and provided them with an application to make that request. The Human Resources department then worked with those employees and their workplace to find an appropriate place to express breast milk. The FDNY's chart of Express Breast Milk Applications shows that many women exercised their rights to lactation accommodations, and, until 2019, it also indicated those who received notification of their rights and chose not to exercise them. In light of the FDNY's policy and practice of notifying nursing mothers of their lactation rights, Plaintiff does not specify how the information provided to her and other employees was discriminatory or deficient with regard to the laws in effect at the time. Thus, Plaintiff has set forth "mere conclusory allegations" of violations, which are insufficient to satisfy Rule 23(a)'s commonality requirements. *See R. A-G ex rel R.B.*, 2013 WL 3354424, at *9.

*     *     *

Accordingly, because Plaintiff has not established commonality with regard to the Nursing Mothers Class, I respectfully recommend that Plaintiff's Motion be denied.

### III.    Additional Rule 23(a) Considerations

Because Plaintiff's Motion fails on commonality grounds, it is unnecessary for the Court to consider the additional Rule 23(a) or 23(b) requirements. Nonetheless, Plaintiff has also failed to establish typicality and adequacy.

"Typicality requires that the claims of the class representative be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Paciello v. Unum Life Ins. Co. of Am.*, 213 F.3d 626, at *2 (2d Cir. 2000) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d

21

285, 291 (2d Cir. 1992)) (citation to summary order). "The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown*, 609 F.3d at 475 (quoting *Marisol A.*, 126 F.3d at 376). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol A.*, 126 F.3d at 376 (alteration in original) (quoting *Falcon*, 457 U.S. at 157 n.13).

As stated *supra*, Plaintiff's claims of discrimination are specific to her, and therefore, atypical of the proposed class. Plaintiff was the only female Auto Mechanic in the Fleet Services Division and there is no evidence that any other potential class member was in the same division or worked under the same supervisors. Plaintiff provides no information about the experiences of employees outside of her division or evidence to suggest that FDNY had a general policy of discrimination toward nursing employees such that those outside of her division would have been similarly treated.

Adequacy of representation is also required to certify a class. It requires that "plaintiff's attorneys are qualified, experienced and able to conduct the litigation" on behalf of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "In assessing the adequacy of counsel, a court may examine class counsel's conduct in both: (1) prior litigations, and (2) the putative class action before the court." *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992).

Proposed class counsel Sanders has missed deadlines and conferences in this case, failing to comply with the November 16, 2020 deadline to make a settlement demand, the February 26, 2021 deadline to submit a settlement statement, and to appear for a status conference on February 19, 2021. (*See* Minute Entry dated Feb. 24, 2021.) In support of the Motion, Attorney Sanders did not attach affidavits or statistical analysis and stated that he contacted only one other potential class member who did not want to participate. (*See* Oral Arg. Tr. 42:20-43:14 (In response to the question, "Have

you spoken with other potential class members?" Attorney Sanders replied, "Maybe one other person.").) These actions and failures to act call into question whether Attorney Sanders can adequately represent the Nursing Mothers Class. *See, e.g.*, *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2019 WL 4933607, at *1 (E.D.N.Y. Oct. 7, 2019) (finding that "red flags" regarding counsel's competency to represent the class included his "failure to adequately respond to the court's orders regarding witness lists" and that "counsel disclosed that he planned to call only two class members as witnesses at trial.").[6]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Motion be denied.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          March 24, 2023

---

[6] Defendants brought to the Court's attention the New York State Division of Human Rights' finding in 2010, affirmed by the New York State Supreme Court Appellate Division, Second Department, that Attorney Sanders and his firm had discriminated against a pregnant employee. (City Def. Mem. of Law at 24); *see In re Goldberg*, 487 B.R. 112, 118 (Bankr. E.D.N.Y. 2013). Defendants also assert that Attorney Sanders failed to pay the judgment ordered and was held in contempt by a U.S. Bankruptcy Court judge as a result. (City Def. Mem. of Law at 24.) Such prior conduct militates against a finding of adequacy. *See, e.g.*, *Kingsepp*, 142 F.R.D. at 600 (finding an attorney inadequate to serve as class counsel where he failed in previous cases to, *inter alia*, follow court orders, honor a settlement agreement, and had been sanctioned and referred to court's disciplinary board).

23